UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

TIMOTHY MARCUS MAYBERRY,

    Plaintiff,

    v.   CAUSE NO. 3:24-CV-187-HAB-SLC

JOHNSON, RON NEAL, and DAVID
LIEBEL,

    Defendants.

## AMENDED OPINION AND ORDER[1]

Timothy Marcus Mayberry, a prisoner without a lawyer, filed a complaint, raising claims concerning his ability to practice his religion while in the custody of the Indiana Department of Correction ("IDOC"). ECF 1. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

---

[1] This order is amended on the court's own initiative to correct an error in the order of May 29, 2024. ECF 5.

**First Amendment: Free Exercise Clause**

Mayberry first alleges that the diet he is provided at Indiana State Prison violates his right to freely exercise his religion. "The Free Exercise Clause prohibits the state from imposing a substantial burden on a central religious belief or practice." *Kaufman v. Pugh*, 733 F.3d 692, 696 (7th Cir. 2013) (internal quotation marks and citations omitted). "A substantial burden puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Thompson v. Holm*, 809 F.3d 376, 379-80 (7th Cir. 2016) (citation and internal quotation marks omitted). "[F]orcing an inmate to choose between daily nutrition and religious practice is a substantial burden." *Thompson v. Holm*, 809 F.3d 376, 380 (7th Cir. 2016). Though, "[i]n the prison context, a regulation that impinges on an inmate's constitutional rights, such as one imposing a 'substantial burden' on free exercise, may be justified if it is 'reasonably related to legitimate penological interests.'" *Kaufman v. Pugh*, 733 F.3d 692, 696 (7th Cir. 2013) (quoting *O'Lone v. Shabazz*, 482 U.S. 342, 349 (1987)).

Mayberry practices a form of Islam. In August 2022 while located at Miami Correctional Facility, Mayberry was approved to receive a halal diet. ECF 1 at 4. Since then he has been receiving kosher meals; when he questioned why he was being given kosher meals, he was told that kosher and halal were the same.[2] ECF 1 at 4. He later

---

[2] Mayberry includes as a defendant Chaplain Croto, the chaplain at Miami who told him that kosher and halal were the same. Any individual claim Mayberry may have against Chaplain Croto is unrelated to the adequacy of the kosher diet provided to Mayberry at his current facility. "Unrelated claims against different defendants belong in different suits . . .." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). The court, therefore, will dismiss Chaplain Croto as improperly joined. *See* FED. R. CIV. P. 20(a), 21; *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 683 (7th Cir. 2012) (A district court may "solve the [unrelatedness] problem by . . . dismissing the excess defendants under Fed. R. Civ. P. 21.").

discovered some differences between the two diets. He is currently located at Indiana State Prison ("ISP"), where kosher food is prepared onsite in a kosher kitchen and only vegetarian meals are served. Mayberry contends that the vegetarian kosher diet is not an acceptable substitute for a halal diet because the requirements for the two diets are not identical.

"[T]he first amendment does not require prisons to accommodate every element of each inmate's faith." *Andreola v. Wisconsin*, 171 F. App'x 514, 515 (7th Cir. 2006). "[I]t is enough to accommodate religious dietary needs shared by a significant number of prisoners; inmate-specific diets are not required." *Id.* In light of the existing caselaw regarding religious diets in prison settings, Mayberry cannot proceed on a claim that a vegetarian kosher diet is an unconstitutional substitute for a halal diet. *See Jones v. Carter*, 915 F.3d 1147, 1148 (7th Cir. 2019) ("[M]any Jewish and Muslim inmates would find a nutritionally adequate vegetarian diet that otherwise satisfies kosher standards to be fully compatible with their beliefs[.]"); *see also Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 810 (8th Cir. 2008) ("The [Bureau of Prisons] decided to serve kosher meals in the Common Fare plan after reviewing the dietary requirements of various religious faiths. It concluded that a kosher meal was the strictest diet and subsumed all other religious dietary needs."); *Williams v. Morton*, 343 F.3d 212, 216-21 (3d Cir. 2003) (concluding at summary judgment that decision to serve vegetarian meals to prisoners requesting halal meals containing meat was reasonably related to legitimate penological interests

and did not violate prisoners' free exercise rights).[3] Because these cases show that a vegetarian kosher diet is generally acceptable to many prisoners who require a halal diet, it does not violate the free-exercise clause of the First Amendment to provide Mayberry a vegetarian kosher diet when he requested a halal diet.

Mayberry also alleges that the way the food is provided for on Saturdays during Ramadan places a substantial burden on his religious practice. ECF 1 at 14. Because the kosher kitchen is closed on Saturdays, Mayberry is given meal sacks on Friday to be eaten on Saturday. He complains that during Ramadan, he is thus not given food on Saturday evenings when he breaks his fast. *Id.* He alleges that during Ramadan in 2023, he went to sleep with stomach pains and severe headaches from not eating. *Id.* at 15. This does not violate the First Amendment, as the allegations establish that Mayberry is provided with Saturday's food the day before and it is up to him to portion it out himself on Saturday.

---

[3] The court also takes note of the history detailed in *Willis v. Commissioner, Indiana Department of Correction*, 753 F. Supp. 2d 768 (S.D. Ind. 2010), of the cost-related reasons the Indiana Department of Correction used to develop its current plan to have kosher kitchens in a few of its facilities and provide vegetarian kosher meals to the inmates there requiring a kosher or halal diet. Initially, IDOC provided inmates requiring kosher or halal meals with prepackaged kosher meals. *Id.* at 772. But the costs of those meals were in addition to the amount paid to its food contractor for the rest of the food service and became, in IDOC's view, unsustainable. *Id.* IDOC attempted to cut costs by switching inmates requiring a halal diet from kosher meals to providing just a halal entrée to supplement the otherwise halal-compliant sides provided for the regular menu. *Id.* Even though the halal entrées were cheaper than an entire kosher meal, costs still increased. *Id.* Other cost-cutting measures did not work, so IDOC switched to providing only vegan meals in place of providing kosher or halal meals. *Id.* at 772-73. That change prompted the class action in *Willis*, brought by inmates who require "a kosher diet to properly exercise their religious beliefs" because, although the ingredients themselves were kosher, IDOC could not guarantee that the meals were prepared in a way that was kosher. *Id.* at 774, 777. In response to *Willis*, "the DOC worked out a new arrangement with its contractor so that kosher meals are now included in the per capita amount it pays the contractor. The DOC built kosher kitchens at a few of its facilities and moved as many kosher inmates into those facilities as possible. Inmates who could not be moved would continue to receive the kosher trays, but inmates (including Jones) in a facility with a kosher kitchen were given only the option of eating the food prepared there. That food, however, is vegetarian (*i.e.* plant-derived, plus animal products not requiring slaughter, such as eggs, milk, cheese, and honey)." *Jones*, 915 F.3d at 1148.

4

## Eighth Amendment

Although the provision of a kosher diet in place of a halal diet does not violate the First Amendment, Mayberry plausibly alleges that the food he receives does not provide adequate nutrition in violation of the Eighth Amendment. He alleges that the kosher diet "routinely" contains rotten and spoiled fruits and vegetable that he cannot eat. ECF 1 at 8, 14, 15. Without this part of the meal, he alleges he does not receive enough nutrition. Under the Eighth Amendment, inmates are not entitled to food "that is tasty or even appetizing," but they must receive food adequate to meet their dietary needs. *Williams v. Berge*, 102 F. App'x 506, 507 (7th Cir. 2004); *see also Isby v. Brown*, 856 F.3d 508, 522 (7th Cir. 2017). In evaluating whether a prisoner was served an adequate quantity of food, "a court must assess the amount and duration of the deprivation." *Reed v. McBride*, 178 F.3d 849, 853 (7th Cir. 1999). For an individual defendant to be held liable, that defendant must have acted with deliberate indifference; deliberate indifference is the "equivalent of criminal recklessness, in this context meaning that they were actually aware of a substantial risk of harm to [Mayberry's] health or safety, yet failed to take appropriate steps to protect him from the specific danger." *Klebanowski v. Sheahan*, 540 F.3d 633, 639 (7th Cir. 2008). Here, Mayberry plausibly alleges that the ongoing lack of fruits and vegetables in his diet deprives him of adequate nutrition. He may, therefore, proceed against Aramark Correctional Services Representative Johnson on an Eighth Amendment claim for inadequate nutrition. Mayberry does not provide a basis to hold the other defendants responsible for the quality of the food being provided to him. *See Burks v. Raemisch*, 555 F.3d 592,

5

595 (7th Cir. 2009) (noting that liability under 42 U.S.C. § 1983 is based on personal responsibility and that prison officials cannot be held liable for damages solely because they hold supervisory positions). Therefore, he may not proceed on this claim against Christina Reagle (the Commissioner of the Indiana Department of Correction); Ron Neal (Warden of Indiana State Prison), David Liebel (the IDOC Director of Religious Services), or the Unknown ISP Chaplains.

### First Amendment: Establishment Clause

Mayberry identifies several instances of differential treatment between Islamic prisoners and prisoners of other religions that he says violate the Establishment Clause of the First Amendment. The First Amendment provides that "Congress shall make no law respecting an establishment of religion . . .." U.S. Const. amend. I, cl. 1. This is made applicable to the states through the Fourteenth Amendment. *Everson v. Bd. of Educ. of Ewing Twp.*, 330 U.S. 1, 8 (1947). Much uncertainty has been injected into the law concerning the Establishment Clause with the abandonment of the three-prong test announced in *Lemon v. Kurtzman*, 403 U.S. 602 (1971). *See Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 510 (2022) (quoting *Town of Greece, N.Y. v. Galloway*, 572 U.S. 565, 576 (2014)) ("In place of *Lemon* and the endorsement test, [the Supreme] Court has instructed that the Establishment Clause must be interpreted by 'reference to historical practices and understandings.'"). But that uncertainty does not extend to situations like this, where the state allegedly prefers one religion over another. "[T]he *Lemon v. Kurtzman* 'tests' are intended to apply to laws affording a uniform benefit to *all* religions, and not to provisions . . . that discriminate *among* religions." *Larson v. Valente*,

6

456 U.S. 228, 252 (1982). Instead, when the state treats one religion or denomination differently from another, courts apply strict scrutiny and "that rule must be invalidated unless it is justified by a compelling governmental interest, and unless it is closely fitted to further that interest." *Id.* at 247.

However, that test is modified when applied in the prison context because prisoner's constitutional rights are necessarily limited by their incarceration. *See Sandin v. Conner*, 515 U.S. 472, 485 (1995) (cleaned up) ("Admittedly, prisoners do not shed all constitutional rights at the prison gate, but lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system."); *O'Lone v. Est. of Shabazz*, 482 U.S. 342, 348 (1987) (cleaned up) ("Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system. The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security."). Thus, in the prison context, prison officials "may not discriminate against minority faiths except to the extent required by the exigencies of prison administration." *Johnson-Bey v. Lane*, 863 F.2d 1308, 1312 (7th Cir. 1988).

With this background, the court turns to the differential treatment Mayberry alleges in his complaint. First, he complains that Jewish prisoners receive a proper kosher diet, but he is not allowed a proper halal diet. For the reasons discussed above, particularly in footnote 3, the "exigencies of prison administration" justify the

7

differential treatment regarding diets. *Johnson-Bey*, 863 F.2d at 1312. Mayberry also complains that the prison allows "Kairos," a Christian-based ministry to provide special meals to the Christian and Jewish prisoners, but no such allowances are made for Islamic prisoners. ECF 1 at 14. Kairos is a volunteer organization that provides religious services at no cost to the Indiana Department of Correction. *See* Kairos Prison Ministry of Indiana, About Us, https://www.kairosofindiana.org/about.html (last visited May 23, 2024). Mayberry does not allege that a Muslim organization has offered to volunteer to provide services but was turned away. He has not plausibly alleged differential treatment on the part of the prison officials.

Finally, Mayberry alleges that celebratory meals are provided for the Christian holidays of Christmas and Easter and for the Jewish Passover but he did not receive celebratory meals in 2023 for the Muslim holidays of 'Eid al-Fitr and 'Eid ul-Adha. ECF 1 at 9-11. He has plausibly alleged an Establishment Clause violation based on the differential treatment of Muslim prisoners with respect to celebratory feasts as compared to Jewish and Christian prisoners.

Mayberry may thus proceed against David Liebel, the IDOC Director of Religious Services, because he is the defendant most likely to be responsible for coordinating and directing a particular religious feast. *See* Ind. Dep't of Corr., Religious Services, Policy and Administrative Procedure No. 01-03-101, p. 22, available at https://www.in.gov/idoc/files/policy-and-procedure/policies/programs/programs-and-services/01-02-101/01-03-101-Religious-Services-3-1-2022.pdf, last visited (May 23, 2024) ("A request for group observance of or special accommodation for a religious

8

holiday, celebration or fast shall be referred to the Director [of Religious Services].").
However, Mayberry does not say how the other defendants might have the personal
responsibility necessary to be sued for money damages. *See Emad v. Dodge Cnty.*, 71
F.4th 649, 653 (7th Cir. 2023) (emphasizing the necessity of determining the
"involvement of each individual defendant in conjunction with Emad's personal and
group prayer claims" in a § 1983 claim for damages). Therefore, he may not procced
against Christina Reagle (the Commissioner of the Indiana Department of Correction);
Ron Neal (the Warden of Indiana State Prison), or Johnson (the authorized Aramark
Correctional Services Representative). ECF 1 at 1-2. Nor may he proceed against the
Unknown ISP Chaplains, based on the allegation that "on April 5th, 2023, I wrote to the
ISP CHAPLAIN(S)' office and asked if REAGLE ('Central Office') and/or NEAL ('ISP')
would also be providing a special celebratory meal for the 'Eid al-Fitr feast after
Ramadan. To date, no one has ever responded to my request." ECF 1 at 12 (internal
citation omitted). In the absence of any plausible allegation that these unnamed ISP
Chaplains had a role in determining whether a feast would be provided, they are also
not proper defendants. Therefore, Mayberry will be allowed to proceed only against
IDOC Religious Director Liebel for failing to provide celebratory feasts in 2023 for
Islamic holidays on par with those provided for Christian and Jewish holidays to the
extent required by the Establishment Clause.

Next, Mayberry alleges that the Establishment Clause was violated when prison
officials coerced him to practice Christianity and Judaism by forcing him to participate
in celebratory meals on the Christian holidays of Christmas and Easter and on the

9

Jewish holiday of Passover. ECF 1 at 9. The entire prison receives special meals for Christmas and Easter, and those inmates receiving a kosher diet receive kosher for Passover meals during the week of Passover. Mayberry particularly emphasizes that he received a memo telling him that all inmates receiving kosher meals would receive the meals that were being provided for Passover and that memo included the wish, "May the significance of the Passover be rich in your life." ECF 1 at 11; ECF 1-1 at 5. Mayberry contends, he is "forced" to celebrate those religious holidays or go hungry.

"[G]overnment may not, consistent with a historically sensitive understanding of the Establishment Clause, make a religious observance compulsory. Government may not coerce anyone to attend church, nor may it force citizens to engage in a formal religious exercise." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 537 (2022) (quotation marks and citations omitted). But "[s]ome holidays that are religious, even sectarian, in origin, such as Christmas and Thanksgiving, have so far lost their religious connotation in the eyes of the general public that government measures to promote them, as by making them holidays or even by having the government itself celebrate them, have only a trivial effect in promoting religion. Even Easter is becoming gradually secularized . . .." *Metzl v. Leininger*, 57 F.3d 618, 620 (7th Cir. 1995); *see Cnty. of Allegheny v. ACLU Greater Pittsburgh Chapter*, 492 U.S. 573, 601 (1989), *abrogated on other grounds by Town of Greece v. Galloway*, 572 U.S. 565 (2014) ("[G]overnment may celebrate Christmas in some manner and form, but not in a way that endorses Christian doctrine.").

Simply being given special meals on days that are significant to other religions does not amount to coercion in the prison context. Mayberry was given food that

10

allowed him to celebrate those holidays if he wished. The receipt of food was not conditioned on professing any particular belief or engaging in a religious ritual. *See Freedom From Religion Found., Inc. v. Concord Cmty. Schs.*, 885 F.3d 1038, 1049 (7th Cir. 2018) (listing considerations of coercion as whether there was "religious activity in which performers or audience members had to partake," whether there was prayer, whether anyone passed out religious literature, and whether the event took place in a church sanctuary). The Establishment Clause does not insulate Mayberry from exposure to other religions. He has not plausibly alleged that the exposure to other religions via celebratory meals and well wishes during the holiday seasons amounted to coercion.

## RLUIPA

Mayberry also challenges his diet under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). RLUIPA offers broader protections than the First Amendment by prohibiting substantial burdens on "any exercise of religion [by an inmate], whether or not compelled by, or central to, a system of religious belief." *Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012); *see also* 42 U.S.C. § 2000cc-5(7)(A). As with the First Amendment, "a prisoner's request . . . must be sincerely based on a religious belief and not some other motivation." *Holt v. Hobbs*, 574 U.S. 352, 360–61 (2015). To state a claim under RLUIPA, an inmate must plausibly allege that an aspect of his religious practice has been substantially burdened. *Id.* At a later stage, the burden will shift to the defendant to show that the challenged conduct is the least restrictive means of pursuing a compelling governmental interest. *Cutter v. Wilkinson*, 544 U.S. 709,

11

723 (2005); *Koger v. Bryan*, 523 F.3d 789, 797 (7th Cir. 2008). However, RLUIPA does not permit a suit against an individual for money damages. *See Nelson v. Miller*, 570 F.3d 868, 886-87 (7th Cir. 2009), *abrogated on other grounds by Jones v. Carter*, 915 F.3d 1147, 1149-50 (7th Cir. 2019). Nor does it allow for money damages against the state. *Sossamon v. Texas*, 563 U.S. 277, 285 (2011). Mayberry's recourse under RLUIPA is limited to injunctive relief.

    Mayberry identifies some ways in which the diet his religion requires differs from a kosher diet, but only some of them may form the basis of a claim under RLUIPA. For example, he says, "Islamic law allows certain meats which are prohibited under Kosher law" and, conversely, certain ways of processing meat is allowed under kosher requirements, but not under his religion. ECF 1 at 8-9. However, the fact that kosher law differs regarding permissible meat does not imply that Mayberry is being served meat that is forbidden to him; he receives a vegetarian kosher diet. Mayberry also says that "Kosher law allows certain food additives (*e.g.*, alcohol, some glycerin, emulsifiers, and enzymes), that are prohibited under Halal law." ECF 1 at 9. But he provides no plausible basis to infer that the food he is served contains any of these prohibited additives. Finally, he says, "Islamic law requires that my regular diet consist of food prepared by a Muslim" and that he consume daily, or at least "regularly," herbivorous animal meat that was "slaughtered by a Muslim in accordance with Islamic law." ECF 1 at 8-9. These requirements—that the food be prepared by a Muslim and that he regularly consume herbivorous meat slaughtered in accordance with Islamic law—are not met by the vegetarian kosher diet.

12

The prison's responsibility under RLUIPA to accommodate his religious beliefs is greater than under the First Amendment and requires the prison to show that providing Mayberry a vegetarian kosher diet in place of what he requests is the least restrictive means of pursuing a compelling governmental interest, not just that it is reasonably related to a legitimate penological interest. It is unlikely that RLUIPA will require the prison to provide Mayberry food that was prepared only by Muslims, but he has alleged enough to proceed past the pleading stage on this issue. Therefore, Mayberry may proceed under RLUIPA against Warden Ron Neal in his official capacity to obtain a diet that complies with his sincere religious belief to regularly consume halal meat from herbivorous animals and to eat food prepared only by Muslims.

Similarly, Mayberry has plausibly alleged that the denial of a feast for 'Eid al-Fitr and 'Eid ul-Adha substantially burdens his religious practice. It is unclear what those feasts require and whether RLUIPA would require the prison to provide it. *See Cutter*, 544 U.S. at 720 n.8 (RLUIPA is "[d]irected at obstructions institutional arrangements place on religious observances" and "does not require a State to pay for an inmate's devotional accessories."). But those are issues that can be developed as the case proceeds. He may proceed under RLUIPA against Warden Ron Neal in his official capacity to be able to celebrate the Muslim holidays of 'Eid al-Fitr and 'Eid ul-Adha as required by his sincere religious beliefs.

For these reasons, the court:

(1) DISMISSES Chaplain Croto under Fed. R. Civ. P. 21;

(2) GRANTS Timothy Marcus Mayberry leave to proceed against Aramark Correctional Services Representative Johnson on an Eighth Amendment claim that the fruits and vegetables in the kosher meals he is served at Indiana State Prison are routinely spoiled and rotten, leaving him with inadequate nutrition;

(3) GRANTS Timothy Marcus Mayberry leave to proceed against IDOC Religious Director David Liebel in his individual capacity for monetary damages for failing to provide celebratory feasts in 2023 for Islamic holidays on par with those provided for Christian and Jewish holidays to the extent required by the Establishment Clause;

(4) GRANTS Timothy Marcus Mayberry leave to proceed against Warden Ron Neal in his official capacity for injunctive relief to obtain a diet that complies with his sincere religious belief to regularly consume halal meat from herbivorous animals and to eat food prepared only by Muslims to the extent required by RLUIPA;

(5) GRANTS Timothy Marcus Mayberry leave to proceed against Warden Ron Neal in his official capacity for injunctive relief to be able to celebrate the Muslim holidays of 'Eid al-Fitr and 'Eid ul-Adha as required by his sincere religious beliefs to the extent required by RLUIPA;

(6) DISMISSES all other claims;

(7) DISMISSES Christina Reagle and Chaplain(s);

(8) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to

14

locate and serve process on) Ron Neal and David Liebel at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 1);

(9) DIRECTS the Clerk of Court, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Aramark Correctional Services Representative Johnson at Indiana State Prison, with a copy of this order and the complaint (ECF 1)

(10) ORDERS the Indiana Department of Correction and Aramark Correctional Services, LLC, to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(11) ORDERS, under 42 U.S.C. § 1997e(g)(2), Johnson, Ron Neal, David Liebel to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on June 18, 2024.

s/Holly A. Brady
CHIEF JUDGE
UNITED STATES DISTRICT COURT