UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

TIMOTHY MARCUS MAYBERRY,

    Plaintiff,

        v.                                           CAUSE NO. 3:24-CV-187-HAB-SLC

RON NEAL, et al.,

    Defendants.

OPINION AND ORDER

Timothy Marcus Mayberry, a prisoner without a lawyer, filed a motion for a preliminary injunction in connection with his religious dietary accommodations. "The purpose of preliminary injunctive relief is to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Platinum Home Mortg. Corp. v. Platinum Fin. Group, Inc.*, 149 F.3d 722, 726 (7th Cir. 1998). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

Mayberry proceeds in this case against five defendants on constitutional claims for damages and injunctive relief in connection with his diet at the Indiana State Prison. ECF 17. Most pertinently to the pending motion, he proceeds on a claim against Warden

Ron Neal in his official capacity for injunctive relief to obtain a diet that complies with his sincere religious belief to regularly consume halal meat from herbivorous animals and to eat food prepared only by Muslims to the extent required by the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). RLUIPA offers broader protections than the First Amendment by prohibiting substantial burdens on "any exercise of religion [by an inmate], whether or not compelled by, or central to, a system of religious belief." *Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012); *see also* 42 U.S.C. § 2000cc-5(7)(A). As with the First Amendment, "a prisoner's request . . . must be sincerely based on a religious belief and not some other motivation." *Holt v. Hobbs*, 574 U.S. 352, 360–61 (2015). To state a claim under RLUIPA, an inmate must plausibly allege that an aspect of his religious practice has been substantially burdened. *Id.* At a later stage, the burden will shift to the defendant to show that the challenged conduct is the least restrictive means of pursuing a compelling governmental interest. *Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005); *Koger v. Bryan*, 523 F.3d 789, 797 (7th Cir. 2008). "This allocation of respective burdens applies in the preliminary injunction context." *Ramirez v. Collier*, 595 U.S. 411, 425 (2022).

Due to Mayberry's status as a prisoner, this case is also subject to the Prison Litigation Reform Act:

> The PLRA circumscribes the scope of the court's authority to enter an injunction in the corrections context. Where prison conditions are found to violate federal rights, remedial injunctive relief must be narrowly drawn, extend no further than necessary to correct the violation of the Federal right, and use the least intrusive means necessary to correct the violation of the Federal right. This section of the PLRA enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: Prison

2

officials have broad administrative and discretionary authority over the institutions they manage.

*Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012) (quoting 18 U.S.C. § 3626(a)(1)(A)).

In the motion for a preliminary injunction, Mayberry appears to assert that his current diet is inconsistent with his sincerely held Islamic beliefs due to a lack of halal meat and halal water and the presence of non-halal food. According to Mayberry, a proper halal diet consists of "fruit, vegetables, grain, eggs, milk, nuts, beans, rice, pasta, seafood, and meat from herbivorous animals properly slaughtered by a Muslim." ECF 28-1 at 1. "Haram food is the opposite of halal food . . . and [includes] any food containing a haram ingredient or that came into contact with a haram food item." *Id.* "Alcoholic beverages are haram; water is haram if it is unclean or comes into contact with another haram food or drink." *Id.* Mayberry professes a sincerely held belief requiring "the regular consumption of halal meat" and further requiring his food to be prepared by Muslim. *Id.* at 12; ECF 36 at 16.

In this motion, Mayberry appears to specifically seek halal meals prepared by Muslims in a kosher kitchen. The Warden responds that such an accommodation would be administratively burdensome, requiring them to develop new menus, order new food items, and provide additional kitchen-space and specialized training to workers. ECF 30-1. It would require additional correctional staff to monitor these workers and longer wait times for meals. *Id.* It would detract from resources used to accommodate the other needs of inmates, including education, rehabilitation, health care, and facility maintenance. *Id.* As a religious accommodation, the facility provides Mayberry with a

3

vegetarian diet that includes eggs and dairy products and is halal-certified. *Id.* Halal meat is also available for sale at the commissary. *Id.* In reply, Mayberry clarifies his request for injunctive relief, asserting that correctional staff could: "(1) serve [him] a proper halal diet, by providing [him] with prepackaged halal-certified meals at a kosher-kitchened facility, or (2) instead of the current kosher diet, provide a proper halal diet for those seeking a kosher or halal diet, since such a diet would satisfy both Islam and Judaism." ECF 36 at 9-10. In the surreply, the Warden asserts that Mayberry does not adequately demonstrate that the second proposed accommodation is either feasible or possible.

To start, the court presumes irreparable harm. *See Int'l Ass'n of Fire Fighters, Loc. 365 v. City of E. Chicago*, 56 F.4th 437, 450–51 (7th Cir. 2022) ("Under Seventh Circuit law, irreparable harm is presumed in First Amendment cases."). The court also finds that that the public has countervailing interests set forth by RLUIPA and the Prison Litigation Reform Act. *See Cutter v. Wilkinson,* 544 U.S. 709, 723 (2005) ("[Lawmakers] anticipated that courts would apply the [RLUIPA] standard with due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources.").

With respect to the likelihood of success on the merits, the applicant need not show that it definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at

762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id*. at 763.

On the sincerity of Mayberry's religion, the Warden points to a departmental form in which Mayberry represented that his religion was "Islam (for the sake of argument)" and the timing of Mayberry's request for a halal diet, which followed his complaints regarding the food served at another facility. ECF 30-2 at 2; *Mayberry v. Pulley*, 3:23-cv-1023 (N.D. Ind. filed Nov. 29, 2023). According to the Warden, this evidence suggests that his religious dietary requests are motivated by a preference for higher quality food. Mayberry responds that he prefers to avoid identifying as a Muslim due to his fear of retaliation. The departmental form also suggests that Mayberry has recommitted himself to Islam in recent years. The court finds that Mayberry has adequately demonstrated the sincerity of his religious beliefs for purposes of this motion.

On the issue of whether Mayberry's current diet substantially burdens his religious beliefs, the court finds *Jones v. Carter*, 915 F.3d 1147 (7th Cir. 2019), to be instructive. In that case, Jones filed a RLUIPA claim, alleging membership in a Muslim sect that required its members to consume a diet that regularly included halal meat. *Id.* at 1148. He requested kosher meal that included meat, which, unlike Mayberry, he found to be an acceptable substitute for halal meat. *Id.* The IDOC refused and asserted the availability halal meat for purchase at the commissary as a sufficient accommodation. *Id.* at 1149. Based on Jones' indigency, the court found that providing halal meat only through the commissary posed a substantial burden on Jones' religious

5

dietary practice. *Id.* at 1150-52. In assessing the substantial burden issue, this case does not differ from *Jones* in any material respect, so the court finds that Mayberry has adequately demonstrated that a diet without meat imposes a substantial burden for purposes of this motion.

"Once a plaintiff has made out his initial case under RLUIPA, it is the government that must show its policy is the least restrictive means of furthering a compelling governmental interest." *Ramirez v. Collier*, 595 U.S. 411, 432 (2022). "Concerns of security are to be given particular sensitivity." *Koger v. Bryan*, 523 F.3d 789, 800 (7th Cir. 2008). "Likewise, orderly administration of a prison dietary system, and the accommodations made thereunder, are legitimate concerns of prison officials." *Id.*

The Warden has credibly asserted that providing Mayberry with prepackaged halal meals prepared by Muslims at a kosher kitchen would incur significant burden and expense, including increased security concerns and the less orderly administration of food to inmates. The record contains no evidence to substantially undermine this assertion. The Warden's assertion also would substantially apply to Mayberry's suggestion to develop a meal plan satisfying adherents of both Judaism and Islam. At this early stage of the proceedings and on this limited record, the Warden's showing persuades the court that Mayberry's requested forms of injunctive relief would harm governmental interests.

Notably, the Warden focuses on criticizing Mayberry's proposed accommodations rather than on showing that the current accommodations for

6

Mayberry are the least restrictive means of furthering government interests. However, Mayberry framed his motion for a preliminary injunction as seeking specific forms of injunctive relief. Moreover, the record at this time does not include any other less restrictive alternative accommodations that would address Mayberry's concerns. Consequently, the court finds that the Warden has satisfied its burden under RLUIPA at this early stage of the proceedings. As a result, the court cannot find that Mayberry is likely to succeed on the merits of this portion of the RLUIPA claim or that the balance of equities weighs in his favor.

     Mayberry also asserts that the water used to prepare his food and his drinking water is unclean. The Warden responds that requests for halal water are beyond the scope of Mayberry's RLUIPA claim and that Mayberry does not adequately support the allegations that he receives unclean water. In reply, Mayberry refers to his amended complaint in which he attests that kitchen workers use contaminated water to prepare his food and that he is forced to drink discolored water with floating particles that smells of sewage. As noted by the Warden, the court did not expressly authorize Mayberry to proceed on an injunctive relief claim under RLUIPA to obtain clean water in the operative screening order. ECF 17. Nevertheless, the allegations in the initial and amended complaint were adequate to support such a claim, and the parties should consider clean water to be a part of the RLUIPA claim going forward.

     That said, the court agrees that the Mayberry has not adequately demonstrated his water-related concerns impose a substantial burden for purposes of this motion. The allegations in the amended complaint are five months old, and Mayberry declines to

7

elaborate on them in the briefing for this motion. ECF 36 at 14-15. Further, it is not clear, from the amended complaint or otherwise, specifically why Mayberry believes that his food is prepared with unclean water. Nor is it clear what access to drinking water is available to Mayberry or whether he contends that drinking water from all available sources are unclean. The courts finds that Mayberry has not demonstrated a likelihood of success on the merits of these allegations.

Mayberry also contends that peanut butter and jelly sandwiches impose a substantial burden because peanut butter and jelly can include ingredients that are not halal and because the packages shed no light on whether they included non-halal ingredients. ECF 15 at 8-9; ECF 36 at 16. Significantly, Mayberry's attestations establish only the possibility that these sandwiches might not be halal. Stated otherwise, Mayberry's attestations do not show that eating these sandwiches would violate his religious beliefs but show that he cannot rule out a potential violation based solely on the packaging. Here, too, the court finds Mayberry has not demonstrated a likelihood of success on the merits of these allegations.

After carefully considering the relevant factors, the court will deny the motion for a preliminary injunction. While irreparable harm is presumed, the public interest has competing interests with respect to the requested injunctive relief. And, at this stage of the proceedings, the court cannot find a likelihood of success on the merits of Mayberry's RLUIPA claim or that the balance of equities weighs in his favor.

For these reasons, the court:

(1) DENIES the superseding motion for a preliminary injunction (ECF 28);

(2) DENIES as UNNECESSARY the motion to waive bond (ECF 27); and

(3) DENIES as MOOT the motion for a preliminary injunction (ECF 25) and the motion to waive bond (ECF 26).

SO ORDERED on January 14, 2025.

s/ Holly A. Brady
CHIEF JUDGE
UNITED STATES DISTRICT COURT