UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| TIMOTHY MARCUS MAYBERRY, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:24-CV-187-HAB-ALT |
| RON NEAL, et al., | |
| Defendants. | |

OPINION AND ORDER

Timothy Marcus Mayberry, a prisoner without a lawyer, filed a motion for a temporary restraining order to obtain clean drinking water.[1] ECF 211. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Instead, the issuance of an injunction is committed to the "sound discretion" of

---

[1] Though Mayberry specifically sought a temporary restraining order, the court has since sought and received responses from the Warden. Consequently, the court finds that this motion is now more appropriately characterized as seeking a preliminary injunction. *See* Fed. R. Civ. P. 65.

the district court. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982). "The standards for granting a temporary restraining order and a preliminary injunction are the same." *Cassell v. Snyders*, 458 F. Supp. 3d 981, 990 (N.D. Ill. 2020).

Mayberry proceeds against the defendants on an Eighth Amendment claim of deliberate indifference for failing to provide him with safe drinking water. ECF 158. Under the Eighth Amendment, prisoners cannot be subjected to cruel and unusual punishment. *See Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Id.* The objective prong asks whether the alleged deprivation or condition of confinement is "sufficiently serious" so that "a prison official's act results in the denial of the minimal civilized measure of life's necessities." *Id.* at 834. On the subjective prong, the prisoner must allege that the defendant acted with deliberate indifference to his health or safety. *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). This standard is satisfied "when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Id.*

On June 29, 2025, Mayberry filed the motion for a preliminary injunction. ECF 211. He represented that the water from the sink in his cell was unsafe to drink and that he had been on lockdown since June 25, 2025. He represented that drinking the sink water caused him "severe headaches, diarrhea, weakness, dehydration, body pains, and sweats, and gastrointestinal distress." He represents that his cellhouse has a filtered

2

water spigot outside of his cell. On each day from June 25 through June 29, he asked a different staff member to get him water from the spigot, and they refused. He also represents that no water or drinkable liquids are served with meals. As a result, he has either drank water from the sink or went "without water altogether." In a subsequent filing, Mayberry informed the court that the lockdown ended on June 30, 2025. ECF 225.

The Warden filed a response to the motion, and Mayberry filed a reply in which he highlighted various discrepancy between his version of the events and the version provided by the Warden and his declarant witnesses. ECF 233, ECF 239. As a result, the court issued the following directive:

> In the response to this order, the Warden should investigate and verify whether or not inmates in the specific cellhouse in which Mayberry resides are given liquids to drink with meals during lockdowns, including the most recent one. The Warden should investigate and address whether the account provided by Officer Banire in the affidavit regarding his interaction with Mayberry during the lockdown is accurate. He should also investigate and address whether the account provided by Mayberry regarding his interaction with Officer Banire on July 18 is accurate. As part of this investigation, the Warded [sic] should look into whether audio recordings of either of these interactions exist; if so, they should be produced. Finally, the Warden should address what action, if any, he or Manager Taylor has taken to address Mayberry's concerns regarding the sink water in his cell since he filed the pending motion for injunctive relief.

ECF 242.

On August 25, 2025, the Warden filed a response to the order, addressing each of the court's concerns. ECF 264. On September 2, 2025, and on September 9, 2025, Mayberry filed replies. ECF 272, ECF 284. While the parties have filed a motion for a hearing and motion for a sur-reply, the court finds that it has adequate information to

3

resolve the motion for a preliminary injunction and denies these motions. ECF 236, ECF 282. The court also observes that much of the parties' briefing focuses on the credibility of the parties and witnesses and on other prisoner lawsuits. The court declines to further comment on these issues, except to note that it has considered them and finds them immaterial to resolving this motion.

What matters for purposes of this motion is whether correctional staff are presently acting with deliberate indifference to Mayberry's access to safe drinking water and what court-ordered measures, if any, are necessary to ensure such access until the ultimate resolution of this case. Critically, Mayberry has described his concerns about safe drinking water as: "The in-cell toilet/sink combination dispenses visibly unsafe drinking water, e.g., debris, discolored, foul-smelling, and contaminated with a translucent slime." ECF 133 at 2. Of particular relevance to this description is the declaration from Deborah Taylor, Safety Hazard Manager at the Indiana State Prison. ECF 264-3. In this declaration, she attests that, on July 28, 2025, she went to Mayberry's cell to sample and evaluate the water. *Id.* She collected the water sample, smelled it, and submitted it to the Warden's office. *Id.* According to Taylor, it had no foul smell and did not have any floating particles in it. *Id.*

The Warden also submitted a video recording of Taylor's visit to Mayberry's cell, which the court has reviewed and finds to be of reasonable quality and consistent with Taylor's attestations. ECF 263. The water flowing from Mayberry's sink and into the sample container appears to be completely clear. While the court cannot discern the presence or absence of odor, Mayberry does not dispute Taylor's attestation that the

4

water had no foul smell in his reply brief filed on September 2, 2025. ECF 272. It thus appears that the specific problem described by Mayberry has been resolved.

Nevertheless, Mayberry disputes the adequacy of this resolution by positing that "Ms. Taylor or [Warden] Neal could have corrected the water delivery system before collecting the sample." ECF 272 at 12. However, from the court's perspective, correcting the water delivery system for Mayberry's cell appears to be an entirely positive development. He notes that Taylor did not attest to conducting any tests beyond her personal observations, but it is unclear why additional testing would be required given Mayberry's specific complaint of visibly dirty water with a foul smell. He posits that the water quality might decrease during lockdowns because inmates use less water during lockdowns, rendering the water more sedentary. However, this theory is entirely speculative with respect to both the levels of water use at various times and its effect on water quality. Moreover, in his numerous filings addressing the topic, Mayberry has never previously described the unsanitary nature of his cell water as intermittent. *See e.g.,* ECF 1, ECF 15, ECF 133, ECF 147, ECF 159, ECF 211, ECF 239.

At base, the court is satisfied that correctional staff are not presently acting with deliberate indifference towards Mayberry's access to safe drinking water and that water in Mayberry's cell is presently safe to drink. The court also finds no substantial basis for finding that the unsafe conditions are likely to recur before the conclusion of this lawsuit. Therefore, the court denies the motion for a preliminary injunction.

Mayberry also filed a motion seeking an order compelling the defendants to preserve evidence. ECF 235. He specifically seeks to preserve video recordings of his

5

conversations with Officer Banire on June 26, 2025, and on July 18, 2025. Notably, the record indicates that the Warden has filed a wall camera recording of the June 26 conversation and has represented that there is no body worn camera footage of these conversations. ECF 263, ECF 264-4 at 6. It is unclear if there is a wall camera recording of the July 18 conversation, but, even if there is, the court declines to issue such an order. Mayberry's asserted concern is that the court will credit Officer Banire over him for purposes of resolving the motion for a preliminary injunction, but the court did not need to assess Mayberry's credibility to resolve this motion.

Relatedly, the Warden filed a motion to maintain under seal and *ex parte* and also seeks a protective order. ECF 265. The subjects of this motion are the departmental policy on body worn cameras and the portions of the Warden's declaration in which he explains the absence of relevant footage from body worn cameras.[2] ECF 279. A court may allow parties to file exhibits under seal and *ex parte* if they contain sensitive information and disclosure could be harmful to other individuals or compromise the security of a correctional facility. *See Piggie v. Cotton*, 344 F.3d 674, 679 (7th Cir. 2003); *Henderson v. United States Parole Comm'n*, 13 F.3d 1073, 1078 (7th Cir. 1994); *Wells v. Israel*, 854 F.2d 995, 999-1000 (7th Cir. 1988). "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(a)(c)(1).

---

[2] A redacted version of this declaration remains on the public docket. ECF 264-4.

After reviewing the exhibits, the court agrees that they contain sensitive information, the disclosure of which could be harmful to other individuals or compromise the security of correctional facilities. Consequently, the clerk's office should continue to maintain these exhibits under seal and *ex parte*, and the defendants are not required to disclose the sensitive portions of these exhibits during discovery.

For these reasons, the court:

(1) DENIES the motion for a preliminary injunction (ECF 211);

(2) DENIES the motion to preserve evidence (ECF 235);

(3) DENIES the motion for a hearing (ECF 236);

(4) DENIES the motion for leave to file a sur-reply (ECF 282);

(5) GRANTS the motion for a protective order (ECF 265); and

(6) DIRECTS the clerk to maintain ECF 279 under seal and *ex parte*.

SO ORDERED on September 18, 2025.

s/ Holly A. Brady  
CHIEF JUDGE  
UNITED STATES DISTRICT COURT