**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

**TIMOTHY MARCUS MAYBERRY,**

        **Plaintiff,**

        **v.**                  **Cause No. 3:24-cv-00187-HAB-ALT**

**RON NEAL,** *et al.*,

        **Defendants.**

## OPINION AND ORDER

Timothy Marcus Mayberry, a prisoner without a lawyer, filed several motions relating to discovery. Under the Federal Rules of Civil Procedure, "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* "Rule 26 vests this Court with broad discretion in determining the scope of discovery, which the Court exercises mindful that the standard for discovery under Rule 26(b)(1) is widely recognized as one that is necessarily broad in its scope in order to allow the parties essentially equal access to the operative facts." *Scott v. Edinburg*, 101 F. Supp. 2d 1017, 1021 (N.D. Ill. 2000). The Court has "broad discretion over discovery matters." *Spiegla v. Hull*, 371 F.3d 928, 944 (7th Cir. 2004).

In this case, Mayberry proceeds on the following claims:

(1) An Eighth Amendment claim for damages against Theresa Johnson, Wayne Peeples, Ron Neal, Christina Reagle, Lloyd Arnold and Supervisor Greer in their individual capacities for serving him rotten fruit and vegetables and for failing to provide safe drinking water;

(2) An Eighth Amendment claim for damages against Aramark for maintaining a policy or practice of serving him rotten fruit and vegetables and failing to provide safe drinking water;

> (3) An Establishment Clause claim for damages against IDOC Religious Director David Liebel, Warden Neal, Theresa Johnson, Wayne Peeples, Christina Reagle, Lloyd Arnold, and Supervisor Greer in their individual capacities for failing to provide celebratory feasts from 2023 through March 2025 for Islamic holidays on par with those provided for Christian and Jewish holidays to the extent required by the Establishment Clause;

> (4) A Religious Land Use and Institutionalized Persons Act (RLUIPA) claim against Warden Ron Neal in his official capacity for injunctive relief to obtain a diet that complies with his sincere religious belief to regularly consume halal meat from herbivorous animals and to eat food prepared only by Muslims; and

> (5) A RLUIPA claim against Warden Ron Neal in his official capacity for injunctive relief to be able to celebrate the Muslim holidays of Eid al-Fitr and Eid ul-Adha as required by his sincere religious beliefs.

(ECF 158).

Interrogatories

First, Mayberry filed a motion to compel the Aramark defendants to respond to his second set of interrogatories. (ECF 112). He represents that the Aramark defendants did not provide a response and that, unlike the State defendants, they did not object to an excessive number of interrogatories and have thus waived such an objection. (*Id.*). The Aramark defendants state that they responded to the second set of interrogatories in an abundance of caution and interpreted the Court's subsequent order as excusing them from further responding to these interrogatories. (ECF 125). The Federal Rules of Civil Procedure states as follows:

> Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts. Leave to serve additional interrogatories may be granted to the extent consistent with Rule 26(b)(1) and (2).

Fed. R. Civ. P. 33(a)(1).

According to the electronic docket, on February 18, 2025, Mayberry served a first set of 25 interrogatories directed at all defendants. (ECF 65). On February 28, 2025, Mayberry served a

second set of 25 interrogatories directed at all defendants. (ECF 70). On March 6, 2025, the State defendants asserted an objection to the excessive number of interrogatories through correspondence. (ECF 73). On March 11, 2025, Mayberry filed a motion to compel the State defendants to respond to his interrogatories over their objection regarding an excessive number of interrogatories. (ECF 78). On March 20, 2025, the Aramark defendants and the State defendants both asked for more time to respond to the first set of interrogatories. (ECF 84, ECF 85). On March 21, 2025, Mayberry served a third set of 18 interrogatories directed at defendants. (ECF 86). On April 2, 2025, the Aramark defendants filed a response to the second set of interrogatories in which they asserted some objections but none relating to the excessive number of interrogatories. (ECF 96).

On April 3, 2025, the Court resolved the motions to extend and the motion to compel as follows:

> Mayberry has now served each Defendant with a total of 68 interrogatories and has not obtained, or sought, leave of Court or consent from Defendants for this number of interrogatories. (See ECF 65, 70, 86). . . . Because Mayberry has served an excessive number of interrogatories on each Defendant, without leave of Court or an appropriate stipulation, the Court denies the motion to compel. Defendants are not required to respond to any interrogatories until Mayberry complies with Federal Rule of Civil Procedure 33(a)(1). Consequently, the Court denies Defendants' motions (ECF 84, 85) to extend the deadline to respond to Mayberry's interrogatories as moot.

(ECF 98 at 2-3). Mayberry's contention that the Aramark defendants waived any objection to the second set of interrogatories based on excessive number by failing to assert it in their response to the interrogatories has some persuasive force, though the Court hesitates to find waiver based on a party's good faith participation in discovery. In any event, a separate related motion filed by Mayberry dissuades the Court from requiring the Aramark defendants to further respond to the second set of interrogatories.

Specifically, Mayberry filed a motion for leave to serve interrogatories in excess of the 25-interrogatory limit set forth in the Federal Rules of Civil Procedure. (ECF 122). He maintains that parties requesting additional interrogatories ordinarily must make a particularized showing as to necessity, but pro se litigants like him need only show good cause. In response, the State defendants assert that a particularized showing is required for leave for additional interrogatories.

The Court has reviewed the judicial opinions cited by the parties on this point. *See Sebolt v. United States*, 2022 U.S. Dist. LEXIS 250690 (S.D. Ind. Jan. 26, 2022); *Thornton v. Lashbrook*, 2020 U.S. Dist. LEXIS 120500 (S.D. Ill. July 9, 2020); *Fair Hous. Ctr. of Cent. Ind., Inc. v. Welton*, 2019 U.S. Dist. LEXIS 97071 (S.D. Ind. June 10, 2019); *McNeil v. Hayes*, 2014 U.S. Dist. LEXIS 37023 (E.D. Cal. Mar. 20, 2014); *Duncan v. Paragon Publ'g, Inc.*, 204 F.R.D. 127 (S.D. Ind. 2001). Succinctly, some of these cases apply a good cause standard, while others require a particularized showing of need, and none of them meaningfully discuss why they chose a specific standard. While the Court takes guidance from these decisions, there is no consistent decision for this Court to follow and, even if there were, these decisions are not binding. *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.").

For instance, in *McNeil*, the court reasoned that the requirement of a particularized showing could not be "divorced" from a plaintiff's pro se status and that depositions are often not realistic options for pro se litigants. 2014 U.S. Dist. LEXIS 37023, at *7-8. Additionally, in *Fair Housing Center*, the court noted that the limit "increases the efficiency of the interrogatory practice by forcing parties to make prudent and constructive use of their 25 written interrogatories" and that "in some instances nominally separate parties should be considered one

4

party for purposes of the 25-interrogatory limitation," particularly when those parties share legal representation. 2019 U.S. Dist. LEXIS 97071 at *8-9, *14.

Against this backdrop, the Court will deny the motion to compel the Aramark defendants to respond to his second set of interrogatories but will partially grant the motion for additional interrogatories. Specifically, the Court grants Mayberry leave to serve and file one set of 35 interrogatories directed at the Aramark defendants and one set of 35 interrogatories directed at the State defendants. The defendants need not respond to any sets of interrogatories served by Mayberry prior to this order. If Mayberry seeks leave to serve even more interrogatories, the Court will require him to make a particularized showing as to why those proposed interrogatories are necessary for him to litigate this case.

Requests for Admissions

Mayberry filed a motion to compel the Aramark defendants to properly respond to four of his requests for admissions. (ECF 114). The Aramark defendants observed that these requests for admissions pertained to religious requirements and that they are not qualified to speak on this topic.

On February 6, 2025, Mayberry served requests for admissions on the Aramark defendants.

Request No. 3.: Under Islamic law, "food must be earned by Muslims to be lawful."

Request No. 15.: The religious diet options you offer are not earned by Muslims.

Request No. 18.: You are aware that, in Islam, food must be earned by Muslims to be lawful.

Request No. 28.: Islam has more dietary restrictions than Judaism.

(ECF 52). On April 18, 2025, the Aramark defendants responded to the pertinent requests for admissions by stating, "Defendants cannot admit or deny this request. Defendants are not experts in Islamic law." (ECF 109). In the motion to compel, Mayberry notes that the quoted language in Request No. 4 is from Aramark's policy for foodservice during Ramadan and that this policy also identifies differences between Islamic and Jewish diets. (ECF 106-2 at 2-3).

Mayberry contends that the Aramark defendants should be able to admit the facts asserted in the corporate policies. Notably, corporate policies serve much different purposes than requests for admissions, and a corporation could reasonably operate on a particular understanding of a religion while lacking sufficient knowledge to verify that understanding as a religious requirement in court. Mayberry does not contest the Aramark's defendants lack of religious expertise. Consequently, the Court declines to compel additional responses to Request Nos. 3, 18, and 28.

It appears that the Aramark defendants would also need some religious expertise to provide a more specific response to Request No. 15. Notably, Mayberry uses the word "earned" in an atypical manner, but he has defined it in other filings as "slaughtered or prepared by Muslims."[1] (ECF 15 at 4 n.3). It is unclear how the Aramark defendants would be able discern whether those preparing "religious diet options" were Muslim or not; at best, the Aramark defendants might be able to state whether the preparers identify themselves as Muslim. Therefore, the Court denies the motion to compel the Aramark defendants to properly respond his requests for admissions.

---

[1] Apart from Mayberry's filings, the Court is unfamiliar with this definition of the word "earned." Though immaterial to these discovery matters, it is unclear why Mayberry believes that the Aramark policy employs that word to mean "slaughtered or prepared" rather than "to receive as return for effort and especially for work done or services rendered" as that word is more commonly defined. *See* Mirriam Webster Dictionary, https://www.merriam-webster.com/dictionary/earn (last visited Dec. 5, 2025).

First Set of Requests for Production

Mayberry filed a motion to compel responses to his first set of requests for production from both sets of defendants. (ECF 117). On February 6, 2025, Mayberry served his first set of requests for production on both sets of defendants. (ECF 51). On April 4 and April 7, 2025, the State defendants responded to the requests for production. (ECF 101, ECF 102). On April 15, 2025, Mayberry sent an informal resolution letter to the State defendants. (ECF 107). On April 22, 2025, the Aramark defendants responded to the requests for production. (ECF 110). On April 29, 2025, Mayberry filed this motion to compel. (ECF 117). On April 30, 2025, the State defendants supplemented their responses to the requests for production. (ECF 119). On May 23, 2025, Mayberry filed a supplemental brief in support of this motion to compel to address the State defendants' supplemental responses. (ECF 148).

To start, the Court agrees that Mayberry's attempt to incorporate his informal resolution correspondence directed at the State defendants was inappropriate. With respect to the State defendants, this motion does not "state with particularity the grounds for seeking the order" as required by Fed. R. Civ. P. 7(b)(1)(B). More specifically, the motion does not identify or cite the specific discovery requests upon which it relies, nor does it identify the specific discovery material sought. Instead, the motion merely cites correspondence between Mayberry and defense counsel that has been filed with the Court. Though the Court will review cited portions of the record as necessary to resolve an argument, a motion that requires the Court to sift through prior filings or exhibits to identify an argument is inappropriate. *See United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003) ("[P]arties [must] make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud."); *APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 631 (7th

Cir. 2002) ("[I]t is not this court's responsibility to research and construct the parties' arguments, and conclusory analysis will be construed as waiver.'); *DeSilva v. DiLeonardi*, 181 F.3d 865, 867 (7th Cir. 1999) ("A brief must make all arguments accessible to the judges, rather than ask them to play archaeologist with the record."); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."). Given the complexity of the discovery disputes and Mayberry's familiarity with federal litigation,[2] the Court declines to consider the concerns presented in the informal correspondence. Nevertheless, the Court will consider the arguments presented in the motion to compel relating to the Aramark defendants and will also consider the arguments presented in Mayberry's supplemental brief.

> **Request No. 1:** Please produce any and all documents you may use to support your defense that you did not violate the Ku Klux Klan Act[3] as it pertains to the incident.

> **Aramark Response:** Defendants have not pled such a defense.

(ECF 110 at 3).

Mayberry argues that his request warrants a different response because he asserts claims under the Ku Klux Klan Act and because the Aramark defendants denied the allegations in his complaint. The Aramark defendants respond that they construed this request as seeking information relating to affirmative defenses and that the request is overbroad to the extent it seeks information supporting their efforts to disprove the allegations of his claims or their negative defense. Mayberry replies that his request closely resembles the category of initial disclosures at Fed. R. Civ. P. 26(a)(1)(A)(ii).

---

[2] Notably, on January 9, 2025, the Court expressly cautioned Mayberry against attempting to incorporate informal correspondence into his motions to compel in *Mayberry v. Hall*, 3:23-CV-911 (N.D. Ind. filed Oct. 13, 2023).

[3] For purposes of clarity, the Court observes that Mayberry has demonstrated a preference for referring to his Section 1983 claims as violations of the Ku Klux Klan Act.

The Court agrees that sweeping requests like Request No. 1 are of limited utility and are difficult to fully satisfy or administer. The better practice is to supplement this broad request with more specific requests or to otherwise identify what specific information a party is seeking, and this would also be true with initial disclosures. Further, in contrast with the broad initial disclosure categories, the Federal Rules of Civil Procedure require that requests for production "describe with reasonable particularity each item or category of items to be inspected." Fed. R. Civ. P. 34(b)(1)(A). Nevertheless, the Court acknowledges that the parties did not exchange initial disclosures in this case and that it cannot fairly characterize the request as unreasonable due to its resemblance to the initial disclosure category. It is also unclear whether or to what degree the Aramark defendants are withholding material responsive information. Therefore, the motion to compel is granted with respect to the Aramark defendants and Request No. 1 of the First Set of Requests for Production. The Aramark defendants should produce any discovery that they would have disclosed in initial disclosures, assuming they were due on the date of this Order, and that has not already been produced in this case.

> Request No. 3: Please produce any and all documents that may be material to the incident, including, without limitation, any non-privileged communication you have had with any person relating to the incident.

> Aramark Response: Defendant objects to this request as it not reasonably particular as required by Fed. R. Civ. P. 34. Because the request is vague and so overbroad, Defendant is unable to answer this request.

(ECF 110 at 3). Mayberry's requests define "incident" as "the event or events described in my Verified Complaint for Damages." (ECF 51 at 6).

Mayberry argues that his request is not vague. The Aramark defendants respond that the operative complaint encompasses a large and indefinite number of events. The Court agrees that the request as written is both vague and overbroad. As written, this request would arguably

require Aramark to produce every communication relating to food service at the Indiana State Prison from February 2023 through at least March 2025, which would be disproportionate to the needs of this case. Therefore, the motion to compel is denied with respect to Request No. 3 of the First Set of Requests for Production.

> Request No. 4: Please produce any and all documents or logs showing when you served me foodservice at all times relevant to the incident; and the times said foodservice was actually passed to prisoners.

> Aramark response: Defendants object to this request as it calls for documents that are irrelevant to this litigation. Subject to and without waiving that objection, because Mr. Mayberry is not in segregation and receives his meals with the other inmates. A specific list of times for that foodservice is not kept.

(ECF 110 at 3-4). Mayberry argues that he has been routinely subjected to lockdown and that fruits and vegetable can spoil when removed from refrigeration and that foodservice records are maintained for general population and during lockdowns. He specifically seeks logs of specific times when food is removed from refrigeration and delivered to inmates. The Aramark defendants contend that refrigeration logs are outside the scope of this request for production.

The Court agrees that refrigeration logs are outside of the scope of this request. Further, the State defendants have since produced some logs showing foodservice, and these logs appear to be maintained by correctional staff. (ECF 234). Given these circumstances, the Court declines to require the Aramark defendants to also produce foodservice logs absent some indication that they cannot be obtained from the State defendants. Therefore, the motion to compel is denied with respect to Request No. 4 of the First Set of Requests for Production.

> Request No. 5: Please produce any and all documents identifying the foodservice suppliers for fruit and vegetables and the purchase specifications, including without limitation, dates said purchases were made for three years before and after the dates relevant to the incident.

> Aramark response: Defendants object to this request insofar as it calls for documents that are irrelevant to the issues in this case. More specifically, the

questions before the Court are whether or not this Plaintiff was served rotten fruit in violation of his constitutional rights. The supplier of the fruit is immaterial to this question.

(ECF 110 at 4).

Mayberry argues that his claim against Aramark regarding their unconstitutional policies and practices allows for discovery beyond the specific timeframe of his claims and that they could show that Aramark obtains fruits and vegetables from faulty suppliers. The Aramark defendants respond that the requested information about the suppliers and the source of food is irrelevant.

The Court agrees that that the identity of the food vendors and the dates of purchase are not materially relevant to the condition of the food when it was served to Mayberry. The request is also vastly overbroad because the request is not limited to purchases for the Indiana State Prison. Additionally, this request seeks information spanning a period of six years, which the Court finds to be disproportionate to the needs of this case even when accounting for the policy-and-practice claim. Therefore, the motion to compel is denied with respect to Request No. 5 of the First Set of Requests for Production.

Request No. 7: Please produce any and all documents relating to or identifying any complaint(s) against you for similar claims (in relation to the incident).

Aramark Response: Defendants object to this request insofar as it is overly broad in what it is seeking and is not proportionate to the needs of this case. The Plaintiff does not reasonable limit his request in time or scope.

Initial State Response: State Defendants object to Request No. 7 as vague, overly broad, and unduly burdensome, as it: requests State Defendants to scour dockets; pull grievance records on a per offender basis and comb through them to find religious based allegations; provides no time period applicable to this Request; and years of the definition of "incident" provided by Plaintiff with his Requests merely refers to his entire pleading in this case, and therefore is not reasonably tailored to the needs of his claims proceeding against State Defendants. State Defendants also object to Request No. 7 as irrelevant to the fact sensitive case-by-case determinations applicable to Plaintiff's claims in this case. State Defendants

also object to Request No. 7 as Plaintiff has the ability to research similar cases on LexisNexis and tailor his Request to complaints concerning particular similar actions based on his research.

(ECF 110 at 4; ECF 119 at 2). The State defendants later supplemented their response to this request by producing complaints filed in federal court by four inmates. (ECF 119-1).

The primary problem with this request is that it is vastly overbroad. It does not limit itself with respect to time or location, while the Aramark defendants represent that Aramark provides correctional food services for fifteen states at hundreds of locations and has existed since 1977, and the State of Indiana has existed for more than two centuries. It also encompasses legal complaints that might be entirely or mostly unsubstantiated and thus of limited probative value. Consequently, the Court will only partially grant the motion to compel with respect to Request No. 7 of the First Set of Requests for Production. The defendants should state whether they have been successfully sued[4] for failing to provide adequate nutrition, adequate water, or a religious dietary accommodation to a prisoner at the Indiana State Prison from February 2021 through October 2025, and, if so, produce a list of the lawsuits, including the caption, case number, and the court in which the lawsuit was filed.

> Request No. 9: Please produce any and all documents identifying your records, obligations, and policies of overseeing, training, supervising, and reprimanding Aramark and its IDOC employees as it relates to serving rotten foodservice.

> Aramark Response: Defendants have no documents responsive to this request.

(ECF 110 at 5). Mayberry contends that "it is implausible that Aramark Defendants have not a single provision, nor is subject to any state or federal law relating to if (or when) they serve or distribute rotten (and spoiled) foodservice." (ECF 117 at 4). The Aramark defendants respond

---

[4] For purposes of this order, the Court defines a successful lawsuit as a lawsuit in which a court or jury found that the defendant was liable for a claim relating to inadequate nutrition or failing to provide religious dietary accommodations, or in which such a claim survived summary judgment and was later settled.

that they are not permitted to serve rotten food and have no responsive documents. The Aramark defendants also submitted an affidavit from the Aramark Vice President of Operations attesting, "Aramark is not permitted to serve rotten fruits or vegetables to inmates. If fruits or vegetables are found that have a problem, they are discarded and suitable food is substituted. Aramark can be held liable under the contract for serving the inmate population improper food." (ECF 137-2 at 3). Mayberry replies that the Aramark vice president described a policy and references an affidavit in which an inmate-worker purportedly attested that "Aramark's policy is to replace rotten or spoiled fruit or vegetable only if a prisoner complains." (ECF 171 at 7).

The Court does not find it inherently implausible that Aramark has no specific written policy that governs when or if rotten food is served to prisoners, or, as the Aramark defendants state, that serving rotten food is prohibited under the more general terms of their contract with the Indiana Department of Correction (IDOC). The Court cannot compel the Aramark defendants to produce documents that do not exist. Additionally, the State defendants have produced the Aramark contract and departmental policies governing food service (ECF 101), and it is unclear why these documents do not sufficiently address this discovery request to the extent it seeks documents setting forth food service obligations in generalized terms.

The Court also declines to require the Aramark defendants to provide sources of State and federal law governing food service to prisoners because that would be tantamount to requiring them to conduct legal research on behalf of an opposing party. Further, while Aramark may have a policy of discarding and substituting rotten produce, it does not necessarily follow that that policy is written. Moreover, the inmate-worker affidavit submitted by Mayberry does not mention the policy or practice of substituting rotten food only upon request of the inmate, though it appears to be missing pages. But, even if it had, it also would not necessarily follow

that that policy or practice had been formally reduced to writing. Therefore, the motion to compel is denied with respect to Request No. 9 of the First Set of Requests for Production.

> Request No. 10: Please produce any and all documents, including without limitation, audit records for the three years prior and after the incident, identifying records reflecting the dates that you initially stocked foodservice products and the length of time you stored these items before discarding or replacing them.

> Aramark response: Defendant objects to this request insofar as it calls for documents that are irrelevant to this litigation. Specifically, only information relating to kosher meal service is relevant. Additionally, the request for documents for the three years prior to the subject matter of this lawsuit are irrelevant. Subject to and without waiving that objection, please see the attached audit records that address the kosher kitchen.

Mayberry argues that he is seeking "records of how and when Aramark Defendants stock foodservice and for how long before discarding or replacing it" and that the temporal scope of his request is appropriate given his policy-of-practice claim against Aramark. (ECF 117 at 5). The Aramark defendants respond that this request seeks audit records, which they produced, that Mayberry's claims span from February 2023 onward, and that prior years are irrelevant.

While the request is not a model of clarity, it appears to request documentation of the dates food products were stocked (or received), discarded, and replaced. Further, information from other periods of time may be broadly relevant to Mayberry's claim against Aramark, but it is unclear why such information would be material or necessary here. The scope of the second amended complaint spans more than two years, which is a substantial amount of time, and Mayberry has attested that he was served spoiled food on a regular basis throughout this time. Therefore, the motion to compel is granted in part with respect to the Aramark defendants on Request No. 10 of the First Set of Requests for Production. To the extent they exist, the Aramark defendants should produce documentation of the dates food products were received, discarded, and replaced at the Indiana State Prison from February 2023 through March 2025.

> Request No. 12: Please produce any and all documents identifying your financial accounting and bookkeeping for purchases of foodservice for the three years prior and after the incident.
>
> Aramark Response: Defendants object to this request for production of documents because it calls for documents that are irrelevant and immaterial to the questions at issue in this case.
>
> Request No. 17: Please produce any and all documents identifying records, ledgers, and accounting of foodservice purchases and contracts between any party involved in the business of providing IDOC prisoners foodservice for the past ten years.
>
> Aramark Response: Defendants object to this request for production of documents because it calls for documents that are irrelevant and immaterial to the questions at issue in this case.

(ECF 110 at 6-7). Mayberry argues that information outside the temporal scope of his claims is relevant because of his policy-or-practice claim against Aramark. He also argues that this information is relevant because it could disclose that Aramark had a financial motive to serve spoiled food to prisoners. The Aramark defendants respond that they had no financial motive and that it would not appear in financial records if they had. They further respond that it is not necessary for Mayberry to demonstrate a financial motive to prevail on his claims.

Financial motive may bear some relevance to the issue of Aramark's culpability, but deliberate indifference may be demonstrated in other ways and without reference to financial motive. Given the volume of evidence already within Mayberry's possession and that will be produced pursuant to this order, it is unclear why he needs to pursue a financial motive theory. Further, Mayberry does not need financial records to pursue a financial motive theory; this type of evidence is not necessary to argue that a for-profit corporation has a financial motive or that restocking items costs a corporation money. Given the generally sensitive nature of financial records and given that they are not materially necessary for litigating this case, the Court denies

the motion to compel with respect to Requests No. 12 and 17 of the First Set of Requests for

Production.

> Request No. 13: Please produce any and all documents identifying your contracts
> between any foodservice provider or contractor, and vice versa, e.g., produce any
> and all documents identifying your contracts between IDOC for providing
> foodservice or contractors for delivering foodservice to you.

> Aramark Response: Defendants object to this request for production of documents
> because it calls for documents that are irrelevant and immaterial to the questions
> at issue in this case.

> Request No. 14: Please produce any and all documents identifying your contracts
> with any and all foodservice provider for fruits and vegetables, which specifically
> identifies the type and species of said item, times supplied, the shelf life of said
> item, the geographical location of origin for said item, and time of travel (from
> geographical location to respective IDOC facility) and storage condition during
> said travel time for said item.

> Aramark Response: Defendants object to this request for production of documents
> because it calls for documents that are irrelevant and immaterial to the questions
> at issue in this case.

> Request No. 15: With respect to the previous Request, please produce any and all
> contracts for the shipping company contracted to deliver foodservice items.

> Aramark Response: Defendants object to this request for production of documents
> because it calls for documents that are irrelevant and immaterial to the questions
> at issue in this case.

(ECF 110 at 6-7). Mayberry argues that these documents are relevant because they could contain

information identifying the state of fruits and vegetables upon delivery or whether Aramark

orders food from suppliers known to provide rotten goods. The Aramark defendants respond that

contracts with Aramark's suppliers is not relevant to the issue of whether they provided

Mayberry with rotten fruits and vegetables.

Here, the Court observes that Mayberry appears to be attempting to trace food items from

the moment they are plucked from the farm to the moment they are served to him. Such

extensive efforts are unnecessary to demonstrate that Aramark has a policy or practice of serving

prisoners spoiled food at the Indiana State Prison. The lack of any limitations with respect to time or location further persuades the Court that the request seeks information is disproportionate to the needs of this case. Therefore, the motion to compel is denied with respect to Request Nos. 13, 14, and 15.

> Request No. 21: Please produce any and all documents identifying the contract(s) between ISP, IDOC, and Aramark relating to prepackaged religious meals and religious meats.

> Aramark Response: Defendants object to this request for production of documents because it calls for documents that are irrelevant and immaterial to the questions at issue in this case.

(ECF 110 at 8). The Aramark defendants argue that this request is similarly irrelevant because "the question is not where the food came from, but instead the condition in which it was actually serve to the inmate population." (ECF 137 at 14-15). However, this request strikes the Court as more materially relevant than the prior set of requests as it relates to the contractual relationship of the Aramark defendants and the IDOC rather than the contractual relationship between the Aramark defendants and non-party suppliers. That said, the State defendants have produced the contract between Aramark and the IDOC, which includes a section on religious diets. (ECF 101 at 23). Because it is unclear why this contract does not suffice for purposes of this discovery request, the Court denies the motion to compel with respect to Request No. 21 of the First Set of Requests for Production.

> Request No. 23: Please produce any and all documents or logs showing when you provided water filtration systems to ISP staff, including without limitation, documents showing why said filtration systems were required/provided in the first place.

> State Response: State Defendants object to Request No. 23 as vague, overly broad, lacking reasonable particularity, and unduly burdensome, as it requests State Defendants to produce all documents for an indefinite time period concerning matters irrelevant to this action. For purposes of this Request, State Defendants presume Plaintiff is seeking any documents covering from February

9, 2023 to the present, being the time period since Plaintiff has been confined at ISP. State Defendants also object to Request No. 23 as irrelevant and as constituting an improper fishing expedition as Plaintiff's claims concern his drinking water and not that of ISP staff.

Without waiving the above objections, State Defendants have requested relevant maintenance records and inspections, including those related to water. State Defendants will promptly supplement their production by producing these records–subject to all objections reserved–upon receipt, and in accordance with Rule 26(e).

(ECF 101 at 12). In the supplement to the motion to compel, Mayberry argues that the State defendants have refused to provide "on-site discovery regarding the water." (ECF 148 at 6). The State defendants respond that they produced annual water quality reports from the City of Michigan City Waterworks Department from 2017 to 2023 and that facility staff do not test the water. (ECF 102-1). Though Mayberry maintains that three correctional staff members told him that "ISP's water was tested and it was safe," this showing does not persuade the Court that records of onsite water testing likely exist. These are hearsay statements from non-parties, two of whom are not identified by Mayberry, and such statements could also reasonably refer to the Michigan City reports identified by the State defendants. Therefore, the Court denies the motion to compel with respect to Request No. 23 of the First Set of Requests for Production.

Request No. 24: Please produce any and all documents identifying foodservice budgeting, purchasing, and accounting practices, including without limitation:

(a) Food expenditure cost accounting designed to determine cost per meal per incarcerated individual;

(b) Estimation of foodservice requirement;

(c) Purchase of supplies at wholesale and other favorable prices and conditions, when available;

(d) Religious meals and religious meats;

(e) Celebratory holiday meal costs;

(f) Fresh favorite food sales and costs;

(g) Determination of, and responsiveness to, incarcerated individuals eating preferences; and

(h) Refrigeration of food, with specific storage time periods and records.

<u>Aramark Response:</u> Defendants object to this request for production of documents because it calls for documents that are irrelevant and immaterial to the questions at issue in this case.

(ECF 110 at 10-11). Mayberry argues that the defendants have previously asserted that accommodating his religious dietary requests would impose an undue financial burden and that he needs information on the cost of religious meals to assess the veracity of this assertion. He also argues that he needs information relating to the costs of refrigerating and food storage because they might "shine light on why [he] continues to receive rotten and spoiled fruits and vegetables." (ECF 117 at 8).

The Court finds that information relating to the cost of religious meals is materially relevant to Mayberry's claims as it arguably directly relates to a defense asserted by the State defendants in connection with Mayberry's motion to obtain a preliminary injunction relating to his religious dietary accommodations. (ECF 30). By contrast, the Court finds that information relating to the costs of refrigeration and food storage is too attenuated from the Eighth Amendment claims in this case. Consequently, the Court will partially grant the motion to compel with respect to Request No. 24 of the First Set of Requests for Production. The Aramark defendants should provide any documentation reflecting the current cost of providing religious meals and celebratory holiday meals to inmates at the Indiana State Prison.

<u>Second Set of Requests for Production</u>

Mayberry filed a motion to compel responses to his second set of requests for production from the Aramark defendants and a separate motion to compel responses from the same set of

19

requests from the State defendants. (ECF 183, ECF 197). On April 22, 2025, Mayberry served

his second set of requests for production on both sets of defendants. (ECF 113). On May 27,

2025, the Aramark defendants filed a response to the discovery requests. (ECF 146). On June 10,

2025, the State defendants filed a response to the discovery requests. (ECF 176).

In the motion to compel directed at the Aramark defendants, Mayberry again attempts to

incorporate by reference his informal resolution correspondence. While this was inappropriate,

the Aramark defendants responded to the motion on its merits, so the Court will also resolve the

motion on its merits.

> Request No. 1: Please Produce the Aramark Correctional Services Medical
> Nutrition Therapy & Religious Meals Manual.
>
> Aramark Response: Defendants object to producing the Medical Nutrition
> Therapy & Religious Meals Manual as it is irrelevant to the issues pending in this
> case. This is an internal document used solely by Aramark and contains
> proprietary information. This document does not dictate what meals are served to
> inmates with the IDOC. The Aramark contract and accompanying approved
> menus for kosher meals contain that information. These items have already been
> produced in this case.
>
> State Response: State Defendants object to Request No. 1 as seeking material
> already in Plaintiff's care, custody, and possession, as pages from this manual
> relevant to Plaintiff's claims are attached to plaintiff's operative complaint and
> referenced in the complaint allegations therein. State Defendants also object to
> Request No. 1 to the extent it seeks material not within State Defendants' care,
> custody, or possession. State Defendants also object to the extent Request No. 1
> seeks information irrelevant and disproportional to the needs of this case.

(ECF 146 at 3, ECF 176 at 2).

The Court declines to compel the State defendants to produce a manual

maintained by the Aramark defendants. Mayberry correctly states that, under certain

circumstances, parties may have an obligation to try to obtain responsive information

from other entities, but it is unclear why the motion to compel directed at the Aramark

defendants does not suffice in this particular instance. Further, the State defendants

represent that they have requested the manual from the Aramark defendants and that they did not provide it.

With respect to the Aramark defendants, the Court has reviewed the two pages of the manual attached to the second amended complaint, which pertain to the diet served to observing inmates on Ramadan and to kosher diets for inmates. (ECF 106-2 at 2-3). The manual seems broadly relevant to the religious diet claims asserted by Mayberry. Though the manual might not govern religious foodservice at the Indiana State Prison, it appears to provide guidance that reasonably might have affected such foodservice. The Court also does not understand how the purportedly proprietary nature of the manual constitutes a valid basis for an objection. The Aramark defendants may be intending to assert that producing the manual would impose an undue burden or expense or is disproportionate to the needs of this case, but the Court declines to sustain such an objection absent a more thorough explanation.

Therefore, the motions to compel are granted with respect to the Aramark defendants on Request No. 1 of the Second Set of Requests for Production. The Aramark defendants should produce the Aramark Correctional Services Medical Nutrition Therapy & Religious Meals Manual. To the extent the Aramark defendants wish to reassert their objections, they may do so but only if they are able to credibly provide a more thorough explanation.

With respect to Request No. 2, the parties appear dissatisfied with the arguments and objections asserted in connection with this discovery request. However, the defendants appear to have produced all responsive documents. ECF 176-1; ECF 176-2.

Consequently, the Court denies the motions to compel with respect to Request No. 2 of the Second Set of Requests for Production.

> <u>Request No. 3:</u> Please produce any and all documents that identify how and when you have accommodated Ramadan for the past five years.
>
> <u>Aramark Response:</u> Defendant objects to this request for production of documents because it misstates the facts of the relationship between Aramark and the IDOC. Specifically, the Indiana Department of Corrections defines the meals that Aramark is required to provide. Subject to and without waiving that objection, please see attached "Exhibit 3."
>
> <u>State Response:</u> State Defendants object to Request No. 3 as vague, overly broad, and unduly burdensome, as it seeks all documents for an overly broad 5 year time period. For purposes of this Request, State Defendants presume Plaintiff is seeking any documents from February 9, 2023 to the present, being the time period since Plaintiff has been confined at ISP. State Defendants also object to Request No. 3 as overly broad in category, as it seeks records for Ramadan accommodations generally. State Defendants further object to Request No. 3 to the extent it seeks material
> irrelevant and disproportional to the needs of this case, as Plaintiff was not denied Ramadan accommodations at ISP. (ECF 15-1 at 7).
>
> Without waiving any objections, State Defendants direct Plaintiff to the following: religious records . . . (Dkt. 101-2); religious memos and records . . . (Dkt. 153-2); and 2025 Ramadan Training (ECF 146-2).

(ECF 146 at 3, ECF 176 at 3).

In response to the motion to compel, the Aramark defendants produced the Ramadan training documents for 2023 and 2024. (ECF 208-1, ECF 208-2). With respect to the Aramark defendants, Mayberry's remaining concern appears to be that they did not also produce Ramadan training documents for 2021 and 2022. To Mayberry's point, five years may be reasonable timeframe for policy-and-practice claims as a general proposition, but Mayberry's policy-and-practice claim does not relate to Ramadan foodservice or any other religious foodservice. Even if it had, it is unclear why a three-year timeframe would not suffice for this particular request.

With respect to the State defendants, Mayberry's concern appears to be that they did not produce any religious memos from 2023 and 2024. The State defendants respond that they did produce religious memos for those years at ECF 153-2, which the Court has confirmed. Mayberry did not reply to this response. Consequently, the Court denies the motions to compel with respect to Request No. 3 of the Second Set of Requests for Production.

> Request No. 4: Please produce any and all documents that identify how and when you have accommodated the Eid feast, ritually held at the conclusion of Ramadan, for the past five years.
>
> Aramark Response: Defendant objects to this request for production of documents because it misstates the facts of the relationship between Aramark and the IDOC. Specifically, the Indiana Department of Corrections defines the meals that Aramark is required to provide. Subject to and without waiving that objection, Defendant does not possess any documents regarding service of meals specifically related to
> the Eid feast. Pursuant to IDOC request, Aramark provides an enhancement meal that is served to cover this this religious feast along with other religion's holidays. A copy of the enhancement meal requirement is contained in the contract that has already been provided. The attached language is contained in the contract [at ECF 101 at 23].
>
> State Response: State Defendants object to Request No. 4 as vague, overly broad, and unduly burdensome, as it seeks all documents for an overly broad 5 year time period. For purposes of this Request, State Defendants presume Plaintiff is seeking any documents from February 9, 2023 to the present, being the time period since Plaintiff has been confined at ISP. State Defendants also object to Request No. 4 to the extent it seeks documents duplicative of [Request No. 3].
>
> Without waiving any objections, State Defendants direct Plaintiff to the following: religious records . . . (Dkt. 101-2); religious memos and records . . . (Dkt. 153-2); and 2025 Ramadan Training (ECF 146-2).

(ECF 146 at 3-4, ECF 176 at 3).

With respect to the Aramark defendants, Mayberry argues that the Aramark defendants should be sanctioned because they falsely stated, "Aramark provides an enhancement meal that is served to cover this religious feast." However, whether the defendants have accommodated Mayberry's religious dietary needs in connection with Eid al-Fitr appears to be a central dispute

in this lawsuit. (ECF 106-1 at 17-21; ECF 245 at 11-14). The Court also finds it puzzling that Mayberry would have served this discovery request given his position that the defendants have never accommodated his religious dietary needs for Eid al-Fitr. In any event, the Court declines to resolve a material fact dispute in connection with a motion to compel.

With respect to the State defendants, Mayberry represents that they produced many non-responsive documents that do not mention the "Eid feast," which, according to Mayberry, is feast at the end of Ramadan. However, many of the documents reference Ramadan, including several references specifically to Eid al-Fitr meals. (*See e.g.*, ECF 153-2 at 5-7). Mayberry also argues that Warden Neal and Director Liebel's separate responses to his request for admissions contain conflicting information about whether inmates are accommodated with Eid al-Fitr meals. While somewhat unusual, it does not strike the Court as improper for individuals in different positions, duties, and places of employment to have different understandings of both discovery requests and of prison administration. Therefore, the Court denies the motions to compel with respect to Request No. 4 of the Second Set of Requests for Production.

### Third Set of Requests for Production

Mayberry filed two motions to compel responses to his third set of requests for production from the Aramark defendants and a separate motion to compel responses from the same set of requests from the State defendants. (ECF 181, ECF 228, ECF 253). On April 22, 2025, Mayberry served his second set of requests for production on both sets of defendants. (ECF 120). On May 30, 2025, the State defendants filed responses to the discovery requests. (ECF 153). On June 9, 2025, the State defendants supplemented their responses. (ECF 175). On June 10, 2025, Mayberry filed a motion to compel, arguing that the Aramark defendants provided no response to the discovery requests. (ECF 181). On June 13, 2025, the State

defendants supplemented their responses again. (ECF 184). On June 25, 2025, the Aramark defendants filed responses to the discovery requests. (ECF 202).

Because the Aramark defendants have now filed responses to the discovery requests, the Court finds that the motion to compel filed on June 10, 2025, is moot. Similarly, on June 24, 2025, Mayberry filed a motion asking the Court to order the State defendants to send him legible copies of their supplemental responses, but the State defendants sent him copies without any need for a court order. (ECF 204, ECF 207). Therefore, the Court finds that this motion is also moot.

> Request No. 2: Please produce all documents you intend to use to support your assertion that you have not violated the Ku Klux Klan Act, RLUIPA, or Monell as it relates to the incident.
>
> State Response: State Defendants object to Request No. 2 as duplicative of Plaintiff's Request No. 1 contained in his first requests for production to Defendants in this action. (ECF 51 at 7). State Defendants also object to Request No. 2 as irrelevant to this action, as you are not proceeding on any claims under the "Ku Klux Klan Act." State Defendants also object to Request No. 2, as Plaintiff is not proceeding on any Monell claims against State Defendants, nor could he. State Defendants further object to Request No. 2 as vague and lacking the required particularity under Federal Rule of Civil Procedure 34.
>
> Without waiving any objections, State Defendants have not yet determined all documents they intend to use to support defense of Plaintiff's RLUIPA claim. State Defendants are in the process of gathering cost estimates associated with Plaintiff's RLUIPA claim. State defense counsel sent another follow up to IDOC central office on May 30, 2025, and will promptly supplement and produce the information and any associated documentation to Plaintiff promptly upon receipt.

(ECF 153 at 2-3).

As previously noted, Mayberry has expressed a preference to referring to his Section 1983 claims as falling under the "Ku Klux Klan Act." While the State defendants' confusion regarding this atypical label for a Section 1983 claim is understandable, they should supplement their response in light of this clarification. Therefore, the motions to compel are granted with

respect to the State defendants and Request No. 2 of the Third Set of Requests for Production.

The State defendants should supplement their response with the clarification that Mayberry

understands his Section 1983 claims as falling under "the Ku Klux Klan Act."

> Request No. 3: Please produce all documents showing maintenance logs relating to the plumbing infrastructure, e.g., water line replacement or inspection or purging of the water pipes anticipated or completed.
>
> State Response: State Defendants object to Request No. 3 as vague, overly broad, and unduly burdensome, as it seeks all documents for the facility generally and without providing any time period. For purposes of this Request, State Defendants presume Plaintiff is seeking any documents from February 9, 2023, to the present, being the time period since Plaintiff has been confined at ISP. State Defendants also object to Request No. 3 to the extent it seeks material irrelevant and disproportional to the needs of this case.
>
> Without waiving any objections, State Defendants produce the following to Plaintiff: 2023 ISP Annual Inspection Report, . . . 2024 ISP Annual Inspection Report, . . . and 2025 ISP Annual Inspection Report . . .

(ECF 153 at 3). Mayberry argues that the State defendants have not provided a complete

response. The State defendants express that they have produced thousands of documents in

response to this request and do not know what other documents Mayberry seeks given the

ambiguous scope of the request. The State defendants' argument is well-taken. They have

produced about 1,400 pages of responsive documents, and, in the briefing for the motion compel,

Mayberry does not specifically identify what additional information or documents he is seeking.

Because it appears that the State defendants have adequately responded to this request, the

motions to compel are denied with respect to Request No. 3 of the Third Set of Requests for

Production.

> Request No. 4: Please produce all documents of how you accommodate enhanced/celebratory meals on specific secular and religious holidays, e.g., Christmas, Passover, Thanksgiving, Easter, etc., and including, but not limited to, financial costs, deliveries, staffing changes, inventory purchases, and any other atypical action not normally undertaken in the normal day-to-day operations of foodservice at ISP.

Aramark Response: Defendants object to this request because it is not reasonably particular in terms of what it is seeking. The phrase "any other atypical action not normally undertaken in the normal day-to-day operations of food service at ISP" is vague in what it is seeking. The request is also objectionable because it is not reasonably limited in time or scope. It also seeks documents that are immaterial to the subject matter of this litigation. The financial costs, deliveries, staffing changes, inventory purchases, are immaterial to the question of whether Plaintiff suffered a constitutional deprivation.

State Response: State Defendants object to Request No. 4 as vague, overly broad, and unduly burdensome, as it seeks all documents without providing a time period. For purposes of this Request, State Defendants presume Plaintiff is seeking any documents from February 9, 2023 to the present, being the time period since Plaintiff has been confined at ISP. State Defendants also object to Request No. 4 to the extent it seeks irrelevant material disproportional to the needs of this case. State Defendants further object to Request No. 4 as vague and ambiguous, as it is unclear what documents or type of documents Plaintiff is seeking for this Request.

Without waiving any objections, State defense counsel sent another follow up for cost estimates to IDOC central office on May 30, 2025, and will promptly supplement and produce the information and any associated documentation to Plaintiff promptly upon receipt. It is unclear what particular documents Plaintiff is seeking. State Defendants produce the following to Plaintiff: Policy provisions and Chaplain Memos, . . .
IDOC Policy 01-03-101: Religious Services (eff. 3-1-2022), . . .  and
Executive Directive #22-08 Religious Services (eff. 2-11-2022).

(ECF 153 at 3-4, ECF 221 at 4).

With respect to the Aramark defendants, the Court agrees that this request is duplicative of Request No. 24 of the First Set of Requests for Production. Because the Court has already compelled the Aramark defendants to respond to that request, the Court declines to do so here.

In response to the motion to compel, the State defendants argue that the contract between Aramark and the IDOC governs the department's costs and expenses for all meals served to inmate, including religious dietary accommodations. Mayberry contends that the State defendants' response is inadequate because the contract merely provides a "general costs per regular meal rate." (ECF 277 at 5).

The contract is entirely consistent with the State defendants' position. Specifically, the contract sets a payment rate of $1.466 per meal subject to inflation adjustments. (ECF 101-1 at 43). It does not set a separate rate or contain any reference to holiday meals. It delegates purchasing, storage, delivery, preparation, service, cleaning, equipment maintenance, and staffing to Aramark. (*Id.* at 17, 29). It also contains a merger clause, stating, "This Contract constitutes the entire agreement between the parties." (*Id.* at 11). In other words, the contract reflects that the IDOC does not pay more for holiday meals.

Mayberry also takes issue with the State defendants asserting an intent to supplement their response with cost estimates if they receive them from the IDOC central office. Notably, it is unclear what cost estimates the State defendants are referencing, whether they exist, or even whether the State defendants have since produced them given the substantial number of discovery-related docket entries in this case. Further, there is nothing inherently wrong about responding to a discovery request by noting an ongoing investigation with the results to be supplemented later. After all, parties cannot produce documents or provide information that they do not have. That said, if the State defendants have not yet either produced them or explained why they are unable to do so, they should provide such a response promptly given that they issued the request to IDOC central office in May 2025.

Therefore, the motions to compel are granted with respect to the State defendants and Request No. 4 of the Third Set of Requests for Production. If the State defendants have not yet either produced the cost estimates requests from the IDOC central office or explained why they are unable to do so, they should supplement their response accordingly.

<u>Fourth Set of Requests for Production</u>

Mayberry filed a motion asking the Court for *in camera* review of the redacted daily housing unit logs produced by the State defendants in response to Request No. 1 of the Fourth Set of Requests for Production. (ECF 288). More specifically, he asks the Court to assess whether the State defendants are only redacting privileged material. The State defendants respond that they are amenable to *in camera* review but clarify that they not redacting information subject to privilege but that the redactions are subject to the confidentiality provisions of the Health Insurance Portability and Accountability Act and of 210 I.A.C. § 1-6-2. (ECF 295).

On May 30, 2025, Mayberry served a Fourth Set of Requests for Production on the State defendants. (ECF 155). On July 18, 2025, the State defendants responded to the discovery request as follows:

Request No. 1: Please produce accurate and certified copies of ISP logbooks from February 2023 through current, specifically, for A-Cellhouse from February 2023 to September 2024, C-Cellhouse from September 2024 to November 2024, and B-Cellhouse from November 2024 to current.

State Response: State Defendants object to Request No. 1 as duplicative of Plaintiff's Request No. 4 within his First Requests for Production (Dkt. 51 at 8). Plaintiff is aware of State Defendants position and ongoing objections as it pertains to these logbooks, given their voluminous nature, overbreadth of the time period the logbooks are being sought, and the dubious relevance they have to this action, if any. State Defendants also object to Request No. 1 as unduly burdensome, vague, and overly broad, given the burdensome undertaking this imposes on State Defendants for all records since your arrival at Indiana State Prison ("ISP"). State Defendants also object to Request No. 1 as lacking reasonable particularity and as constituting an improper fishing expedition. State Defendants also object to Request No. 1 as irrelevant to any claims or defenses in this action, and therefore not likely to lead to discovery of admissible evidence. State Defendants further object to Request No. 1 to the extent Plaintiff is acting in bad faith by submitting this duplicate request. State Defendants further object to Request No. 1 on safety, security, and confidentiality grounds, as it contains sensitive and confidential information concerning non-party incarcerated individuals that is protected health information ("PHI") restricted from public disclosure under the Health Insurance Portability and

Accountability Act ("HIPAA"), 45 C.F.R. § 164.502, and/or restricted by Indiana Department of Correction ("IDOC") from public disclosure pursuant 210 I.A.C. § 1-6-2.

Without waiving the above objections, State Defendants supplement their response to Request No. 4 contained in Plaintiff's First Requests for Production (Dkt. 51 at 8), as set forth below.

The records requested are overly broad in scope, disproportional to the needs of this case, and impose a heavy burden on State Defendants and their counsel. Logs are kept in the housing units. These logs are handwritten and contain a summary of the shift's events, but they do not include every request or response submitted by an incarcerated individual each day. The purpose of the logs it to track offender movement. Each log will need to be scanned in manually and copied to fulfill the request. There are 2 logs for each day. Therefore, this overly broad request requires staff to manually scan in and copy handwritten logs totaling 3,774 pages, and defense counsel to review and redact sensitive information on a page-by-page basis. State Defendants previously requested that you narrow this request to certain dates that are relevant to your claims in this action. (Dkt. 51 at 8). Although you clarify housing units, you did not narrow your Request as sought in any manner. State Defendants reserve all rights to seek any allowable costs and fees associated with their production, to the extent permitted.

However, for efficiency purposes only, State Defendants produce the following: Logs Feb. – June 2023, . . . and Logs July – Sept. 2023 . . . .

State Defendants will produce the remaining logs on a rolling basis as review and redaction of confidential information is completed.

(ECF 234). To date, the State defendants have produced 1,669 pages of the daily logs from February 9, 2023, through June 30, 2024, on a rolling basis. (ECF 234-1; ECF 234-2; ECF 243-1, ECF 249-1, ECF 266). In the response to this motion, the State defendants also ask the Court to rule on their objection to the broad scope of the request and to determine whether they must produce the remaining 2,105 pages or only the pages pertaining to Ramadan in 2025.[5]

---

[5] Mayberry argues that the State defendants should have made this request in a separate motion for a protective order. While the Court agrees that filing a separate motion would have been the better approach, the briefing provides sufficient information for a resolution. Consequently, the Court will resolve this dispute on its merits.

The Court will accept the unredacted daily logs for *in camera* review given that the parties have agreed to it. However, reviewing nearly four thousand handwritten pages in their entirety would impose a substantial burden on the Court, and it seems that a sampling of these daily logs would suffice for assessing whether the State defendants have misrepresented the nature of their redactions. Consequently, the Court will review only a sampling of the daily logs.

The Court also finds that requiring the State defendants to review and produce more than two thousand additional handwritten pages (and nearly four thousand handwritten pages in total) is disproportionate to the needs of this case. Mayberry has already received the daily logs for sixteen months, and the Court will require the State defendants to also produce the pages pertaining to Ramadan 2025. Though Mayberry vaguely asserts that this request as written is proportionate to the needs of the case, it remains unclear why seventeen months of daily logs in addition to the abundance of other information available to Mayberry does not suffice for this single-plaintiff case.

Therefore, the motion for *in camera review* is granted, and the State defendants should file *ex parte* and under seal an unredacted version of the daily logs filed at ECF 234-1. The State defendants' request for a ruling on their objections is also granted, and the State defendants should produce only the daily logs for Ramadan 2025.

<u>Fifth Set of Requests for Production</u>

Mayberry filed a motion to compel the State defendants to respond to his Fifth Set of Requests for Production. (ECF 259). He filed another motion to compel that focuses on the State defendants' responses to Requests Nos. 2 and 3 of the Fifth Set of Requests for Production. (ECF 286). The Aramark defendants filed a motion for a protective order in connection with Request No. 5 of the Fifth Set of Requests for Production. (ECF 222). On June 9, 2025, Mayberry served

a Fifth Set of Requests for Production directed at both sets of defendants. (ECF 174). On July 9,

2025, both sets of defendants filed responses to the discovery requests. (ECF 220, ECF 221).

> Request No. 2: Please produce any document or communication showing when and how the filters on the water fountains available to prisoners are changed or maintenance.
>
> State Response: State Defendants object to Request No. 2 as vague, overly broad, and unduly burdensome, as it seeks maintenance material for the "water fountains available to prisoners" generally, and is not reasonably particularized or proportional to the needs of this case. State Defendants also object to Request No. 2 as seeking material irrelevant to any claims or defenses in this action. State Defendants further object to Request No. 2 as vague, ambiguous, and confusing, as it is unclear to State Defendants what material Plaintiff is seeking for this Request.
>
> Without waiving the above objections, State Defendants direct Plaintiff to the following: 2024 Work Orders (ECF 184-2 at 533); 2025 Work Orders (ECF 184-3 at 8-9, 217).

(ECF 220 at 2-3).

Mayberry argues that the State defendants' response is inadequate because the work

orders address faulty water fountains rather than a "record of when or how water filters are

changed or maintenanced" and notes that he observed maintenance staff change the filter on the

water fountain in B Cellhouse at his request. The State defendants represent that they do not

understand what Mayberry is seeking given the vagueness of his request.

The Court finds that Mayberry has adequately clarified his request in the motion compel

but that the State defendants' objection to the scope of the request also warrants consideration.

Therefore, the motion to compel is granted with respect to the State defendants on Request No. 2

of the Fifth Set of Requests for Production. To the extent they exist, the State defendants should

produce documents showing records of when or how filters for water fountains accessible to

inmates were changed or maintained at the Indiana State Prison from February 9, 2023, to the

present date.

Request No. 3: Please produce a true and accurate copy of the user's manual from the manufacturer of the filters that are used on the water fountains available to prisoners (this should show the mandatory or suggested maintenance schedule and when (and how) to replace said filters).

State Response: . . .  Without waiving the above objections, State Defendants are not in possession of material responsive to this request at this time. However, for convenience and efficiency purposes, ISP's Physical Plant Director spoke with a water fountain brand representative. The business representative has contacted the manufacturer and requested the material. State Defendants will supplement their production promptly with anything received, or to confirm whether there was any existing material responsive to this Request.

(ECF 220 at 2-3). On September 9, 2025, the State defendants supplemented their discovery responses and produced a two-page document providing information about 3M Aqua-Pure AP717 In-Line Filtration System for Refrigerators/Ice Makers. (ECF 281-1). In the motion to compel, Mayberry characterizes this document as a brochure rather than the requested manual. The State defendants respond that they have fulfilled their discovery obligations by conducting a reasonable investigation by contacting the brand representative and producing what they found. In reply, Mayberry asserts that the manual is available online but that he lacks the ability to access it.

As suggested by Mayberry, the Court was able to locate what appears to be the requested manual at https://multimedia.3m.com/mws/media/756427O/installation-and-operating-instructions-for-ap717-in-line-filtration-system.pdf. Given the ease of producing this manual to Mayberry, the Court will grant the motion to compel with respect to Request No. 3 of the Fifth Set of Requests for Production and require the State defendants to produce the manual, which is available on the manufacturer's website.

Request No. 5: Please produce, in substance, with specificity, your financial records for the past three years, including without limitation, any: (A) Annual report; (B) Appraisal or other business valuation; (C) Cash flow statement; (D) Federal and state tax returns; (E) Financial forecast; (F) Financial statement; (G) bankruptcy filings; (H) GDP (gross domestic product); (I) Statement of revenues

and liabilities; (J) Duns & Bradstreet and/or any other corporation operating number; (K) Assets and liabilities; (L) Loan applications; (M) Real properties; (N) Mortgages; Debt instruments; and (O) W-2 and 1099 statements.

(ECF 174 at 9). In response to this request, the State defendants produced the State of Indiana's annual comprehensive financial support for the 2024 fiscal year and lodged objections, and the Aramark defendants filed a motion for protective order. (ECF 220 at 4-6, ECF 220-1, ECF 222). The defendants argue that this request seeks information that is disproportionate to this case and that there are security concerns regarding inmates possessing such extensive information about prison staff. Mayberry responds that this information is relevant for purposes of punitive damages.

The Court agrees that the request as written is disproportionate to the needs of this case, and the security-related concerns are well-taken. Nevertheless, the Court also agrees that Mayberry is entitled to some financial information as a result of his punitive damages request. With respect to Aramark, the Court understands that its parent corporation is a publicly traded company and that, as a result, certain aspects of its financial status are publicly available. With respect to the individual defendants, it seems likely that their various employment positions have a range of salaries, which might be reflected on a recent job posting or other similar documentation. The Court finds that this level of financial information is sufficient for purposes of assessing punitive damages. It also does not appear to expose any defendants to security concerns.

Therefore, the Court will require both sets of defendants to respond Request No. 5 of the Fifth Set of Requests for Production. Aramark should provide recent publicly available documents that state its parent corporation's income, revenue, and valuation. The individual defendants should provide documentation stating the current range of salaries for their current

34

positions. Though this ruling grants partial relief to the Aramark defendants, the Court finds that a protective order is unnecessary and declines to issue one.

<u>Related Matters</u>

In various filings, the parties have asked the Court to disregard opposing parties' arguments due to the opposing parties' failure to present them in a timely manner. Succinctly, the Court does not find any instance of untimeliness to be so egregious as to warrant disregarding relevant arguments. Similarly, in various filings, Mayberry has requested a hearing to resolve these discovery disputes, but the Court has now resolved the pending discovery disputes and denies the request for a hearing as unnecessary.

Further, in every motion to compel, Mayberry seeks sanctions against the defendants, asserting that they have lodged frivolous and bad faith objections, misinterpreted the scope of his claims, and sent him unresponsive documents. The Court cannot find that the defendants' discovery efforts in this case warrant sanctions. Their participation in discovery has been substantial, providing responses to the numerous sets of discovery requests and discovery motions and also providing several sets supplemental responses without court intervention. At this stage of the proceedings, they have produced thousands of pages of responsive documents.

Significantly, discovery is not an exact science. Misunderstandings between parties regularly occur during the discovery stage, and not all of them are unreasonable or are otherwise sanctionable. This is particularly true in this case given the vast number of discovery filings. Certainly, it would have been preferable for defense counsel to have avoided making any mistakes, but neither the federal rules nor the rules of professional ethics require perfection from counsel. Though the Court disagreed with some objections, it agreed with others, and it does not find that any of them were so unreasonable or egregious as to warrant sanctions. Objections, too,

are often debatable, and the Court generally has substantial discretion in resolving them. For example, there is simply no bright-line rule as to the appropriate temporal scope for discovery requests. If the parties disagree, the Court must necessarily rule against one or both parties in order to resolve the discovery dispute. Under such garden-variety circumstances, sanctions will rarely be warranted. Therefore, the Court denies the requests for sanctions.

For these reasons, the Court:

(1) DENIES the motion to compel responses to interrogatories (ECF 112);

(2) PARTIALLY GRANTS the motion for additional interrogatories (ECF 122);

(3) DENIES the motion to compel responses to requests for admissions (ECF 114);

(4) PARTIALLY GRANTS the motion to compel responses to the First Set of Requests for Production (ECF 117);

(5) PARTIALLY GRANTS the motion to compel responses to the Second Set of Requests for Production from the Aramark defendants (ECF 183);

(6) DENIES the motion to compel responses to the Second Set of Requests for Production from the State defendants (ECF 197);

(7) DENIES the motions to compel responses to the Third Set of Requests for Production from the Aramark defendants (ECF 181, ECF 228);

(8) DENIES the motion for copies (ECF 204);

(9) PARTIALLY GRANTS the motion to compel responses to the Third Set of Requests of Production from the State defendants (ECF 253);

(10) PARTIALLY GRANTS the motion for *in camera* review (ECF 288);

(11) PARTIALLY GRANTS the motion for a protective order (ECF 222);

(12) PARTIALLY GRANTS the motion to compel responses to the Fifth Set of Requests for Production from the State defendants (ECF 259, ECF 286);

(13) ORDERS the defendants to file discovery responses consistent with this Order by February 2, 2026;

(14) DENIES the motions to strike (ECF 212, ECF 256, ECF 260, ECF 283); and

(15) DENIES the motion for a hearing (ECF 200).

SO ORDERED.

Entered this 8th day of December 2025.

/s/ Andrew L. Teel
Andrew L. Teel
United States Magistrate Judge