**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

TIMOTHY MARCUS MAYBERRY,

      Plaintiff,

          v.                     CAUSE NO. 3:24-cv-00187-HAB-ALT

RON NEAL, *et al.*,

      Defendants.

## OPINION AND ORDER

The parties have filed several pending discovery motions in this case. Under the Federal

Rules of Civil Procedure, "parties may obtain discovery regarding any nonprivileged matter that

is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ.

P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be

discoverable." *Id.* "Rule 26 vests this Court with broad discretion in determining the scope of

discovery, which the Court exercises mindful that the standard for discovery under Rule 26(b)(1)

is widely recognized as one that is necessarily broad in its scope in order to allow the parties

essentially equal access to the operative facts." *Scott v. Edinburg*, 101 F. Supp. 2d 1017, 1021

(N.D. Ill. 2000). The Court has "broad discretion over discovery matters." *Spiegla v. Hull*, 371

F.3d 928, 944 (7th Cir. 2004).

In this case, Mayberry proceeds on the following claims:

(1) An Eighth Amendment claim for damages against Theresa Johnson, Wayne
Peeples, Ron Neal, Christina Reagle, Lloyd Arnold and Supervisor Greer in their
individual capacities for serving him rotten fruit and vegetables and for failing to
provide safe drinking water;

(2) An Eighth Amendment claim for damages against Aramark for maintaining a
policy or practice of serving him rotten fruit and vegetables and failing to provide
safe drinking water;

(3) An Establishment Clause claim for damages against IDOC Religious Director David Liebel, Warden Neal, Theresa Johnson, Wayne Peeples, Christina Reagle, Lloyd Arnold, and Supervisor Greer in their individual capacities for failing to provide celebratory feasts from 2023 through March 2025 for Islamic holidays on par with those provided for Christian and Jewish holidays to the extent required by the Establishment Clause;

(4) A Religious Land Use and Institutionalized Persons Act (RLUIPA) claim against Warden Ron Neal in his official capacity for injunctive relief to obtain a diet that complies with his sincere religious belief to regularly consume halal meat from herbivorous animals and to eat food prepared only by Muslims; and

(5) A RLUIPA claim against Warden Ron Neal in his official capacity for injunctive relief to be able to celebrate the Muslim holidays of Eid al-Fitr and Eid ul-Adha as required by his sincere religious beliefs.

(ECF 158).

On February 28, 2024, Mayberry initiated this case by filing a complaint. (ECF 1). The discovery stage in this case opened on February 14, 2025. (ECF 63). On December 8, 2025, the Court entered an order in an attempt to resolve numerous discovery disputes. (ECF 317). The parties have filed three discovery motions relating to this order. (ECF 359, ECF 368, ECF 374).

More specifically, on March 10, 2026, Mayberry filed a motion to compel responses to this order from the Aramark Defendants. (ECF 359). The Aramark Defendants initially objected to Request No. 1 of Mayberry's Second Set of Request for Production as follows:

**Request No. 1:** Please Produce the Aramark Correctional Services Medical Nutrition Therapy & Religious Meals Manual.

**Aramark Response:** Defendants object to producing the Medical Nutrition Therapy & Religious Meals Manual as it is irrelevant to the issues pending in this case. This is an internal document used solely by Aramark and contains proprietary information. This document does not dictate what meals are served to inmates with the IDOC. The Aramark contract and accompanying approved menus for kosher meals contain that information. These items have already been produced in this case.

(ECF 146 at 3, ECF 176 at 2). On December 8, 2025, the Court resolved this discovery dispute as follows:

> With respect to the Aramark defendants, the Court has reviewed the two pages of the manual attached to the second amended complaint, which pertain to the diet served to observing inmates on Ramadan and to kosher diets for inmates. (ECF 106-2 at 2-3). The manual seems broadly relevant to the religious diet claims asserted by Mayberry. Though the manual might not govern religious foodservice at the Indiana State Prison, it appears to provide guidance that reasonably might have affected such foodservice. The Court also does not understand how the purportedly proprietary nature of the manual constitutes a valid basis for an objection. The Aramark defendants may be intending to assert that producing the manual would impose an undue burden or expense or is disproportionate to the needs of this case, but the Court declines to sustain such an objection absent a more thorough explanation. Therefore, the motions to compel are granted with respect to the Aramark defendants on Request No. 1 of the Second Set of Requests for Production. The Aramark defendants should produce the Aramark Correctional Services Medical Nutrition Therapy & Religious Meals Manual. To the extent the Aramark defendants wish to reassert their objections, they may do so but only if they are able to credibly provide a more thorough explanation.

(ECF 317 at 21).

On March 24, 2026, the Aramark Defendants filed a motion for a protective order relating to the Medical Nutrition Therapy and Religious Meals Manual. (ECF 368). They explain that the manual contains confidential and proprietary information, that Aramark has invested substantial effort and resources to develop it, and takes significant measures to prevent disclosures to business competitors. They argue that it qualifies as a trade secret, concerns operational methods, protocols, and implementation strategies for medical and religious meal accommodations in correctional facilities, and that disclosing it would put Aramark at a competitive disadvantage. The Aramark Defendants further argue that the most relevant pages are already within Mayberry's possession and that the remainder of the manual is irrelevant and disproportionate to the needs of the case. Mayberry responds that the manual might contain relevant information, that the Aramark Defendants have not produced the manual for *in camera*

review, and that it could be produced subject to reasonable restrictions afford through a protective order. The Aramark Defendants reply that, if the Court is not inclined to immediately sustain their objection, the Court should review the manual *in camera* to assess the need for confidentiality and relevancy and to allow them to produce it pursuant to a protective order subject to reasonable conditions.

**The Court would prefer to verify the Aramark's assessment of the manual and will require the Aramark Defendants to file the manual for *in camera* review.** If the Court determines that it must be produced subject to a protective order, the protective order will require Mayberry to use the manual only for purposes of this litigation, including appeals, to refrain from making copies and from disclosing it to others, and to destroy any copies within his possession or control at the conclusion of this litigation, including appeals.

Mayberry further argues that the Court should compel the Aramark Defendants' response to Request No. 5 of the Fifth Set of Requests for Production in which Mayberry sought documentation of Defendants' finances to enable the jury to assess punitive damages. (ECF 174 at 9). The Court resolved the dispute relating to this discovery request by ordering Aramark to produce recent publicly available documents that state its parent corporation's income, revenue, and valuation, and ordering the individual defendants to provide documentation stating the current range of salaries for their current positions. (ECF 317 at 33-35). Mayberry specifically argues that the Aramark Defendants did not provide the range of salaries for Defendants Johnson, Peeples, and Greer. However, the Aramark Defendants have since provided this information, so the motion to compel is denied as moot with respect to Request No. 5 of the Fifth Set of Requests for Production. (ECF 391).

On April 2, 2026, Mayberry filed a second motion to compel the Aramark Defendants' compliance with the Court's prior discovery order. (ECF 374). On March 17, 2026, the Aramark Defendants filed shipping invoices as discovery responses. (ECF 361). Mayberry states that he is unable to understand various terms and abbreviations contained with these shipping invoices and asks the Court to order the Aramark Defendants to explain them. The Aramark Defendants respond that they are not required to explain the contents of produced documents under Fed. R. Civ. P. 34. The Court agrees that the Aramark Defendants are not required to explain the shipping invoices as part of their responses to Mayberry's request for production. Mayberry also asks the Court to recruit counsel to assist him with understanding these terms and abbreviations, but the Court declines to recruit legal counsel merely for the purpose of interpreting shipping invoices given that Mayberry has competently litigated this case on his own for more than two years and given that recruited counsel is not likely to possess substantial knowledge about shipping invoices.[1] Therefore, the motion to compel is denied with respect to the shipping invoices.

Mayberry also argues that the Aramark Defendants provided an insufficient response to Request No. 24 of Mayberry's First Set of Requests for Production. In the prior order, the Court ordered the Aramark Defendants "to provide any documentation reflecting the current cost of providing religious meals and celebratory holiday meals to inmates at the Indiana State Prison." (ECF 317 at 19). The Court found that such information arguably related to a defense asserted by the State Defendants in connection with Mayberry's claim for religious dietary accommodation. *Id.*

---

[1] It also strikes the Court as inappropriate to recruit counsel given that Mayberry could have obtained answers to his questions by serving interrogatories. The Court will discuss Mayberry's opportunity to serve interrogatories in greater detail below.

On March 24, 2026, the Aramark Defendants filed a supplemental discovery response in which they objected to the Court's order on the basis that it was overly broad and unduly burdensome because they serve multiple religious and celebratory meals. (ECF 369). They also provided the average cost of kosher meals. (*Id.*). In response to the motion to compel, the Aramark Defendants state that they serve "multiple religious and celebratory meals at multiple correctional facilities. The costs for each meal at each facility varies." (ECF 382 at 2).

It is unusual for a party to lodge objections to a discovery ruling issued by the Court within discovery responses directed at an opposing party; this is simply not the proper vehicle for such an objection. Further, the Court has already restricted the scope of this discovery request to meals currently served at the Indiana State Prison, and the Aramark Defendants provide no compelling basis to restrict it further.[2] **Therefore, the motion to compel is granted with respect to Request No. 24 of Mayberry's First Set of Requests for Production. The Aramark Defendants should produce documentation responsive to the discovery request as reformulated by the Court and must clarify whether they are withholding any responsive documents. If the Aramark Defendants are unable to produce fully responsive documentation, they should explain how they have complied with their obligation to use reasonable efforts to search for it.**

Next, Mayberry filed motions to compel the State Defendants and the Aramark Defendants to respond to his Seventh Set of Requests for Production. (ECF 371, ECF 393). On January 14, 2026, Mayberry filed his Seventh Set of Request for Production. (ECF 332). On March 20, 2026, the State Defendants submitted their responses and objections to these

---

[2] That said, the Court further clarifies that, by using "current," the Court means "meals served in 2025 and 2026 and meals that will be served in 2026."

discovery requests. (ECF 363). On April 24, 2026, the Aramark Defendants submitted their responses and objections. (ECF 385).

In Request No. 1 of Mayberry's Seventh Set of Requests for Production, he asks for "any and all documents showing the construction and completion records of the Uponor project." In response, the State Defendants identified the Uponor project as a plumbing project undertaken at the Indiana State Prison in 2014 and object that the request seeks irrelevant information and is disproportionate to the needs of the case. Mayberry argues that the request is relevant given that his claims relate to the medical symptoms that he has suffered due to the poor quality of his drinking water and that these records might reveal the cause. Defendants respond that they have provided a substantial amount of discovery relating to those allegations, including a water testing report ordered in response to Mayberry's motion for injunctive relief at the expense of $12,000. Given the tenuous and speculative connection between the Uponor project and his medical condition and the substantial discovery produced to date, the Court agrees that this discovery request is disproportionate to the needs of this case. Therefore, the Court denies the motions to compel with respect to Request No. 1 of the Seventh Set of Requests for Production.

In Request No. 2 of the Seventh Set of Requests for Production, Mayberry seeks "any and all documents showing any complaints about the drinking water and foodservice." Defendants respond that Mayberry had served a substantially similar request, that the Court resolved the dispute by substantially narrowing the scope of the request, and that they had already provided a complete response. Mayberry argues that he is now seeking complaints beyond those used to initiate lawsuits. The Court agrees that this request is substantially similar

to a prior request, which also sought complaints beyond those used to initiate lawsuits.[3] (*See* ECF 317 at 11-12). Given that the Court has previously resolved a substantially similar discovery dispute, the motions to compel are denied with respect to Request No. 2 of Mayberry's Seventh Set of Requests for Production.

In Requests for Production Nos. 3-6 and Nos. 9-15, Mayberry seeks information relating to the texturized vegetable protein (TVP) contained in the kosher meals he receives at the Indiana State Prison. Defendants objected on the basis of relevance; they also noted that they have already produced discovery materials containing responsive information and that they do not have any other responsive materials within their possession or control. Mayberry argues that this information is relevant because Defendants have asserted that the kosher diet they serve is also halal-certified and that the information sought includes its ingredients, how it is made, and who makes it.

After carefully reviewing the operative complaint, the Court finds that these discovery requests seek information beyond the scope of the claims. Mayberry pursues an Eighth Amendment claim pertaining to the nutritional inadequacy, but the allegations supporting this claim pertain to poor water quality and spoiled fruits and vegetables. (ECF 106-1). He also pursues a claim seeking religious accommodations for his diet, but the focus of this claim is on religiously contaminated water sources[4] and the absence of meat contained in the kosher diet he

---

[3] Mayberry posits that the Court overlooked the intended scope of his prior request when resolving discovery disputes in the prior discovery order. The Court has no specific recollection on this point, but, given that the Court narrowed the scope of the request not only to lawsuits but to successful lawsuits, it stands to reason that the Court also would not have required Defendants to produce any complaints that were even less formal than those used to initiate lawsuits. In other words, even if Mayberry's assumption is correct, the Court previously found an even narrower version of the request to be disproportionate to the needs of this case.

[4] Mayberry's specific religious concern with water is that he has personally seen other prisoners "contaminate" water spouts with saliva and alcoholic beverages. (ECF 106-1 at 9-10).

now receives. (*Id.*). Thus, even if Defendants have maintained that Mayberry's diet satisfies halal certification requirements, this contention would, at most, tee up only a dispute about whether halal certification requires the inclusion of meat; it would not raise any questions about the inherent nutritional adequacy of TVP or whether TVP violates Mayberry's religious beliefs on any grounds other than that it is not meat. Therefore, the Court denies the motions to compel with respect to Request Nos. 3-6 and Request Nos. 9-15 of Mayberry's Seventh Set of Requests for Production.

In Request No 7, Mayberry seeks documents relating to Defendants' contentions that "the water from the general use spigots (spigots that are used for nonkosher purposes or subject to cross-contamination) are kosher." The State Defendants objected that they had not made such a contention, referred to the water quality reports that they previously produced, and also produced documentation indicating that unflavored water without additives does not require kosher certification. Mayberry primary replies to argue that such general use spigots are not kosher, but he does not appear to seek any further responses to this discovery request from the State Defendants. Nor is the Court able to locate within the record any remark from the Aramark Defendants regarding whether water from general use spigots is kosher. To the contrary, the Aramark Defendants deny serving kosher water and admit not serving halal water in the discovery responses cited by Mayberry. (ECF 109). Therefore, the Court denies the motions to compel with respect to Request No. 7 of Mayberry's Seventh Set of Requests for Production.

In Request No. 20, Mayberry seeks "any and all communications to or from any IDOC staff member since February 2023 in reference to TIMOTHY MARCUS MAYBERRY." The State Defendants object on the basis that the request is overbroad particularly given the number of grievances and lawsuits filed by Mayberry, though they offered to respond to a more narrowly

9

tailored version of the request. The Court agrees that this request is disproportionate to the needs of this case even with the temporal limitation. Prison officials would have numerous valid reasons to discuss Mayberry over the course of three and a half years as they would also have for any other inmate, and the Court perceives no compelling basis to order Defendants to canvass the correspondence of each individual employed by the IDOC who might have plausibly mentioned him during that timeframe. As noted by Defendants, responsive documentation would entail grievance records, law library records, classification records, and more, most of which would bear no relevance to the specific claims in this lawsuit.

Under different circumstances, the Court might narrow the scope of Request No. 20 and order Defendants to respond to it rather than simply denying the motions to compel. However, here, Mayberry has expressly refused the State Defendants' invitation to narrow his request on the basis that he wishes not to rely on their determination of what information is relevant to his claims. (ECF 371 at 8). Like Mayberry, the Court is unable to formulate a narrower version of this request that does not afford Defendants the amount of discretion inherently present when responding to sweeping requests like this one. Consequently, the Court declines to formulate a narrower version of this request and will instead deny the motions to compel with respect to Request No. 20 of Mayberry's Seventh Set of Requests for Production.

In Request No. 21, Mayberry requested as follows:

> Please produce the entire document reflected at ECF 156 at 6-8. If the document no longer exists, please produce any and all documents that replaced it or concern, refer to, reflect, constitute, or evidence how you have performed kosher procedures since February 2023.

(ECF 332 at 11). The State Defendants object that this request seeks information not within their possession or control and that Mayberry appears to refer to a document produced by the Aramark Defendants in *Mayberry v. Pulley*, 3:23-cv-1023 (N.D. Ind. filed Nov. 29, 2023).

Contrary to the phrasing of the request, the three pages cited by Mayberry encompass two separate documents: (1) A two-page document entitled "Frozen Kosher Training – Prepared and Maintenance of area, Product, Preparation of Meals, Custody Check," and dated April 17, 2019; and (2) the third page of a document called "IN DOC Kosher Procedures" written in November 2013. (ECF 156 at 6-8). It appears that Mayberry has received the April 2019 document in its entirety, and Mayberry has since clarified that his focus is on the November 2013 document. The State Defendants identify the November 2013 document as training material from when the IDOC did not have kosher kitchens in any facilities. It is unclear how such dated training material could bear any relevance to the claims in this case considering that Mayberry first arrived at the Indiana State Prison in 2023. Further, to the extent that Mayberry seeks a current version of the November 2013 document, it is unclear why the April 2019 document does not suffice. Therefore, the Court denies the motions to compel with respect to Request No. 21 of Mayberry's Seventh Set of Requests for Production.

In Request No. 22, Mayberry seeks "any and all documents identifying your kosher-water certification and distribution procedures." The State Defendants respond that this request references a set of procedures that do not exist. Though Mayberry questions this response, the State Defendants' supplemental response to Request No. 7 credibly indicates that Defendants do not have such procedures but instead rely on the understanding that unflavored water without additives satisfies kosher requirements. Mayberry also points to the certification procedures for kosher water set forth in the November 2013 training materials, but, as detailed above, those materials are no longer operative and do not meaningfully suggest that Defendants are now withholding information relating to current kosher water practices. Therefore, the motions to

compel are denied with respect to Request No. 22 of Mayberry's Seventh Set of Requests for Production.

Next, Mayberry filed a motion for a hearing on the discovery disputes. (ECF 392). The Court has now resolved the discovery disputes in this case, so a hearing is unnecessary. Therefore, the motion for a hearing is denied.

Additionally, Mayberry filed a motion to extend the discovery deadline, explaining that he intends to serve interrogatories and to consider other discovery options once his pending motion to compel are resolved. (ECF 370). Defendants oppose such an extension, noting that the discovery stage has persisted in this case for eighteen months, the volume of discovery provided to Mayberry to date, and the Court's plan to allow Mayberry only one final round of written discovery set forth in the scheduling order from December 8, 2025.

The Court declines to extend the discovery deadlines any further in this case. The discovery stage opened on February 14, 2025. (ECF 63). Since that time, Mayberry has served 10 sets of written discovery requests on Defendants; Defendants provided responses or supplemental responses thirty-three times producing thousands of pages of responses and documents; and the Court has now resolved twenty discovery motions filed by Mayberry, encapsulating dozens of discovery disputes.

A critical juncture in this discovery stage occurred on December 8, 2025. At that time, the deadlines to complete discovery had already expired with numerous discovery disputes pending and five rounds of written discovery served by Mayberry on Defendants[5] to which

---

[5] Notably, in the Court's order from February 25, 2026, the Court described the requests for production filed by Mayberry on January 14, 2026, as his seventh round of written discovery, relying on Mayberry's titling of those requests as the "Plaintiff's Seventh Request for Production of Documents." (ECF 350 at 2). Though it does not meaningfully affect the analysis here, the Court now clarifies that it is able to locate only six sets of requests for production filed by Mayberry on the electronic docket.

Defendants had already produced substantial responses. In one order, the Court resolved the discovery disputes and ordered Defendants to supplement their discovery responses by February 2, 2026. (ECF 317). The Court also granted Mayberry leave to serve interrogatories in excess of the 25-interrogatory limit set forth in Fed. R. Civ. P. 33(a)(1); specifically, the Court allowed him to "file one set of 35 interrogatories directed at the Aramark defendants and one set of 35 interrogatories directed at the State defendants." (*Id.*). In a separate order, the Court acknowledged both the need to reset discovery deadlines and Defendants' opposition to any extensions given the volume of discovery already exchanged. (ECF 318). The Court extended the deadline to initiate discovery to March 31, 2026, and the deadline to complete discovery to May 29, 2026. (*Id.*). However, the Court also limited Mayberry to serving one further set of requests for production on each set of defendants in addition to the aforementioned interrogatories. (*Id.*). The Court further advised that the parties would need to make a particularized showing of need to initiate any other discovery. (*Id.*).

In issuing these orders, the Court's plan was to allow Mayberry to seek one final round of written discovery before bringing the discovery stage to a close. If this was not clear from the orders issued on December 8, 2025, it became clear on February 25, 2026, when the Court denied Mayberry's motion for leave to serve his seventy allotted interrogatories in three separate rounds to avoid the Court's particularized showing or need requirement. (ECF 350). In denying this motion, the Court wrote as follows:

> In the pending motion, Mayberry seeks clarification as to whether he can serve the sets of interrogatories in multiple rounds to avoid the particularized showing requirement. As an example, he proposes sending a first set of 10 interrogatories, a second set of 10 interrogatories, and a third set of 15 interrogatories. Implied within the Court's prior rulings is that, given the advanced stage of the discovery phase, the Court intends to allow Mayberry one final round of written discovery while allowing any party to seek exceptions if they can show that such exceptions are particularly necessary. Mayberry now seeks leave to conduct an additional

two rounds of discovery without any particularized showing of need, and allowing Mayberry to proceed in this manner would substantially undermine the Court's interest in advancing this case beyond the discovery stage within a reasonable time. Notably, Mayberry has recently served a seventh set of requests for production, which suggests that he is now on his seventh round of discovery. (ECF 332). At base, the Court is unpersuaded an eighth and ninth round of discovery is warranted at this time and denies leave for Mayberry to serve multiple rounds of interrogatories on each set of defendants.

(*Id.*).

One might have reasonably expected Mayberry to have promptly served his sets of interrogatories after receiving this order, particularly in light of the looming deadline to initiate discovery of March 31, 2026. Instead, on March 25, 2026, Mayberry filed a motion to extend the deadline to initiate discovery by four months. (ECF 370). He explained that he needed additional time because he was awaiting responses from Defendants to his Seventh Set of Requests for Production to serve interrogatories and to potentially serve other written discovery requests. Three months later, on July 21, 2026, Mayberry filed a motion to stay summary judgment briefing, indicating that, while Defendants had responded to his requests for production by then, he intended to wait until the court resolved all pending discovery disputes to serve interrogatories. (ECF 419).

Given the Court's clearly stated plan to allow Mayberry one single final round of written discovery and its clearly stated reasons for doing so, it was not reasonable for Mayberry to delay serving his interrogatories until Defendants responded to his Seventh Set of Requests for Production or until the Court resolved all pending discovery disputes. At base, the Court had substantial justification for its plan and afforded Mayberry ample notice of it. Consequently, the Court finds neither good cause nor a particularized showing of need that would justify allowing Mayberry yet another round of discovery. All cases and discovery phases must come to an end at some point. The Court exercises its discretion in managing its docket and discovery matters to

14

find that, for this case, that time is now. Consequently, the motion to extend the deadlines to initiate and complete discovery is denied.

The Court separately considers the motion to stay the summary judgment briefing. (ECF 419). As detailed above, the discovery stage has now closed with the Court having resolved all remaining discovery disputes, but the Court will consider this motion to the extent it invokes Fed. R. Civ. P. 56(d). That rule states:

> *When Facts Are Unavailable to the Nonmovant.* If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or
>
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d). "[S]ound reasons for denying a properly supported Rule 56(d) motion most often are either (1) the moving party's failure to pursue discovery diligently before the summary judgment motion, or (2) the apparent futility of the requested discovery." *Smith v. OSF HealthCare Sys.*, 933 F.3d 859, 866 (7th Cir. 2019).

To start, it is unclear what specific facts Mayberry believes that he is unable to dispute with the evidence currently accessible to him. Though he lists certain purported facts, he merely asserts that Defendants "claim" that these facts are undisputed, so it remains unclear which specific facts Mayberry believes that he is presently unable to dispute.

Further, the purported facts listed by Mayberry seem more appropriately characterized as legal conclusions. For example, he observes that the State Defendants have asserted that: (1) they lack personal involvement for the Section 1983 claims; (2) the evidence is insufficient to find them liable for the Section 1983 claims; (3) they are entitled to qualified immunity; and (4) the

15

evidence is insufficient to obtain injunctive relief under the Religious Land Use Institutionalized Persons Act. These legal conclusions are broad enough to encompass the entirety of Mayberry's case against the State Defendants. Relatedly, Mayberry has made no showing with respect to diligence. Indeed, it is unclear how he could persuade the Court that he has diligently pursued discovery given the exceedingly broad scope of his evidentiary shortcomings and given that he declined to serve his allotted interrogatories prior to the close of discovery. Moreover, Mayberry has not provided copies of the written discovery requests he intends to serve for the Court's review. Therefore, the Court denies the motion to stay summary judgment briefing.

Nevertheless, the Court recognizes the need to set a new deadline for Mayberry to respond to the pending motions for summary judgment (ECF 408, ECF 413). However, the Court will wait to set this deadline until after the Aramark Defendants have supplemented their response to Request No. 24 of Mayberry's First Set of Requests for Production and after the Court has made a determination on the Medical Nutrition Therapy and Religious Meals Manual.

As a final matter, other motions to extend deadlines remain pending, each of which pertains to a specific filing that has since been filed. (ECF 348, ECF 365, ECF 377, ECF 379, ECF 394, ECF 395, ECF 396). The Court grants these motions and will accept the filings as timely.

For these reasons, the Court:

(1) PARTIALLY GRANTS the motion to compel (ECF 374);

(2) ORDERS the Aramark Defendants to comply with this Order by August 28, 2026;

(3) DENIES the motions to compel (ECF 371, ECF 393);

(4) DENIES the motion for a hearing (ECF 392);

16

(5) GRANTS the motions to extend (ECF 348, ECF 365, ECF 377, ECF 379, ECF 394, ECF 395, ECF 396);

(6) DENIES the motion to extend discovery deadlines (ECF 370); and

(7) DENIES the motion to stay summary judgment briefing (ECF 419).

SO ORDERED.

Entered this 10th day of August 2026.

/s/ Andrew L. Teel
Andrew L. Teel
United States Magistrate Judge