UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

TIMOTHY MARCUS MAYBERRY,

Plaintiff,

v.

RON NEAL, et al.,

Defendants.

CAUSE NO. 3:24-CV-187-HAB-ALT

OPINION AND ORDER

Timothy Marcus Mayberry, a prisoner without a lawyer, filed a motion for a preliminary injunction and a motion for a temporary restraining order. ECF 425, ECF 448. "The standards for granting a temporary restraining order and a preliminary injunction are the same." *Cassell v. Snyders*, 458 F. Supp. 3d 981, 990 (N.D. Ill. 2020). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). However, a temporary restraining order differs from a motion for a preliminary injunction in that it is issued without notice to the opposing party and ordinarily expires within fourteen days. *See* Fed. R. Civ. P. 65(b).

Mayberry proceeds in this case against eight defendants on claims for damages and injunctive relief in connection with his diet at the Indiana State Prison. ECF 158. Most pertinently to the pending motion, he proceeds on a claim against Warden Ron Neal in his official capacity for injunctive relief to obtain a diet that complies with his sincere religious belief to regularly consume halal meat from herbivorous animals and to eat food prepared only by Muslims to the extent required by the Religious Land Use and Institutionalized Persons Act ("RLUIPA").

RLUIPA offers broader protections than the First Amendment by prohibiting substantial burdens on "any exercise of religion [by an inmate], whether or not compelled by, or central to, a system of religious belief." *Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012); *see also* 42 U.S.C. § 2000cc-5(7)(A). As with the First Amendment, "a prisoner's request . . . must be sincerely based on a religious belief and not some other motivation." *Holt v. Hobbs*, 574 U.S. 352, 360–61 (2015). To state a claim under RLUIPA, an inmate must plausibly allege that an aspect of his religious practice has been substantially burdened. *Id.* At a later stage, the burden will shift to the defendant to show that the challenged conduct is the least restrictive means of pursuing a compelling governmental interest. *Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005); *Koger v. Bryan*, 523 F.3d 789, 797 (7th Cir. 2008). "This allocation of respective burdens applies in the preliminary injunction context." *Ramirez v. Collier*, 595 U.S. 411, 425 (2022).

In the motion for a preliminary injunction, Mayberry is "only requesting the same accommodation of halal-certified meat currently provided to another prisoner," who he has identified as Roman Lee Jones. ECF 425 at 1. The Warden responds that

Inmate Jones is receiving a kosher diet and is provided halal-certified meat from the commissary eight times per week. He notes that Inmate Jones has different religious dietary preferences than Mayberry in that Inmate Jones partially accepts a kosher diet. Given these considerations, the Warden placed Mayberry on a halal-certified diet with halal-certified meat from the commissary eight times per week.

In reply, Mayberry concedes that he began receiving halal-certified meat on September 8, 2026. He further attests, under penalty of perjury, "Importantly, I never agreed that 8 portions of halal-certified meat would be acceptable; State defendants simply declared that it was." ECF 450 at 2. But this is clearly untrue for two reasons. First, on May 27, 2025, Mayberry testified at deposition that receiving halal-certified meat once per day would satisfy his religious needs. ECF 179 at 27-28. Though Mayberry asserts that he has since developed the religious belief that he requires even more meat, it is plain that the State defendants did not simply make a unilateral determination. Second, in the pending motion itself, he attested, under penalty of perjury, that he sought precisely the same accommodation for halal-certified meat received by Inmate Jones. ECF 425 at 1. Mayberry does not dispute or even suggest that Inmate Jones receives more than eight servings of meat per week. Because Mayberry has received the entirety of the specific relief he requested in the motion for a preliminary injunction, the court denies it and the related motion to waive the bond requirement as moot.[1]

[1] Though the parties argue over whether the Warden's recent provision of meat moots the injunctive relief claim, the court finds that such arguments are more appropriately raised in connection

Next, Mayberry filed a motion for a temporary restraining order, asserting that the halal-certified diet places an even greater burden on his religious beliefs than his prior kosher-certified diet. ECF 448. He explains as follows:

> While both diets are vegetarian, the kosher diet is clean (not openly or so blatantly cross-contaminated) because it is prepared in a kosher-kitchen free from cross-contamination and is wrapped in saran wrap to protect it cross-contamination during transit from the kosher kitchen to its respective recipient. Whereas the State defendants' faux -halal diet is prepared with the general diet food items, which consists of haram products and by-products where it is cross-contaminated and thus najis. And the faux-halal diet is not wrapped up or protected from cross-contamination after it is prepared.

*Id.* at 2-3. As further support, he cites to the operative complaint in which he attested that his religious beliefs require him to consume halal-certified meat on a regular basis and to refrain from consuming water that is contaminated by exposure to unclean products, which he considers najis, and certain food additives. ECF 159 at 3, 4. He further attested that the kosher diet provided at the prison conflicted with his religious beliefs because it did not include halal-certified meat, contained prohibited food additives, and was "prepared with haram water innately najis due to said water being unsafe and contaminated." *Id.* at 7. He described the kosher diet as both haram and najis. *Id.* at 3.

Against this backdrop, it is unclear how the halal-certified diet amounts to an even more substantial burden on Mayberry's religious beliefs than the kosher-certified diet. As an initial matter, Mayberry does not explain how he has personal knowledge as

---

with the underlying claim for permanent injunctive relief rather than in the context of a preliminary injunction. The court makes no finding with respect to the underlying claim at this time. Should the Warden seek dismissal of the underlying claim, he must do so in a separate motion.

to the absence of cross-contamination in the kosher kitchen or the use of "general diet food items" in the halal-certified diet. Nor does he explain how a "general diet food item" is meaningfully different from his religious perspective than the kosher food he regards as haram and najis. Even less clear is what Mayberry means by cross-contamination given that he alleges that the kosher diet, which he now seeks, is both haram and najis, contains prohibited food additives, and was prepared with unsafe and contaminated water. It is thus unclear why Mayberry believes that the kosher kitchen is religiously superior to the non-kosher kitchen or why he believes that plastic wrap could prevent the contamination of what is alleged to be a thoroughly contaminated kosher diet. Similarly, to the extent that he is referring to sanitation rather than strictly religious contamination, he further describes the kosher diet as consisting of spoiled fruits, vegetables, and bread, and he offers no explanation of why he believes that the kosher kitchen is more sanitary than the non-kosher kitchen. Consequently, the court is unable to discern what specific types of contamination Mayberry believes that the plastic wrap or the preparation of his food in the kosher kitchen prevents. By contrast, there are no allegations that the halal-certified diet contains prohibited food additives, was prepared with unsafe water, or consists of spoiled food items.

Mayberry also cites a letter to defense counsel in which he represented that "there is no such thing as a halal-certified vegan or vegetarian diet" and that "a halal-certified diet must consist of halal meats and be earned by Muslims to be consistent with the tenets of Islam." ECF 400. But the Warden has now provided precisely what Mayberry represented that the halal-certified diet offered by the prison was lacking.

And, even if the Warden had not, the halal-certified diet would appear no worse than the kosher diet in this respect. In sum, Mayberry has not demonstrated that remaining on the halal-certified diet will cause him a greater quantum of irreparable harm than reverting to the kosher diet. Moreover, Mayberry does not explain why a temporary restraining order would be appropriate given that the Warden appeared in this case more than two years ago and when his motion does not contemplate an expiration date. Consequently, the motion for a temporary restraining order is denied.

The State defendants also filed a motion for a settlement conference, seeking to settle the claim against Warden Ron Neal in his official capacity for injunctive relief to obtain a diet that complies with his sincere religious belief to regularly consume halal meat from herbivorous animals and to eat food prepared only by Muslims to the extent required by the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). ECF 443. However, Mayberry's subsequently filed response strongly suggests that a settlement conference would not be fruitful at this stage of the proceedings, so the court declines to refer this matter for a settlement conference at this time. Nevertheless, the parties may file another motion for a settlement conference if it appears that both sides are amenable to one with respect to this or any other claim in this case.

For these reasons, the court:

(1) DENIES as MOOT the motion for a preliminary injunction (ECF 425) and the motion to waive bond (ECF 426);

(2) DENIES the motion for a temporary restraining order (ECF 448); and

(3) DENIES the motion for a settlement conference (ECF 443).

SO ORDERED on September 14, 2026.

s/ Holly A. Brady
CHIEF JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT