**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | |
|---|---|
| **TIMOTHY MARCUS MAYBERRY,** | |
| **Plaintiff,** | |
| **v.** | **CAUSE NO. 3:24-cv-00187-HAB-ALT** |
| **DAVID LIEBEL, *et al*.,** | |
| **Defendants.** | |

## OPINION AND ORDER

The parties have filed several discovery motions. Under the Federal Rules of Civil Procedure, "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* "Rule 26 vests this Court with broad discretion in determining the scope of discovery, which the Court exercises mindful that the standard for discovery under Rule 26(b)(1) is widely recognized as one that is necessarily broad in its scope in order to allow the parties essentially equal access to the operative facts." *Scott v. Edinburg*, 101 F. Supp. 2d 1017, 1021 (N.D. Ill. 2000). The Court has "broad discretion over discovery matters." *Spiegla v. Hull*, 371 F.3d 928, 944 (7th Cir. 2004).

In this case, Mayberry proceeds on the following claims:

> (1) An Eighth Amendment claim for damages against Theresa Johnson, Wayne Peeples, Ron Neal, Christina Reagle, Lloyd Arnold and Supervisor Greer in their individual capacities for serving him rotten fruit and vegetables and for failing to provide safe drinking water;
>
> (2) An Eighth Amendment claim for damages against Aramark for maintaining a policy or practice of serving him rotten fruit and vegetables and failing to provide safe drinking water;

> (3) An Establishment Clause claim for damages against IDOC Religious Director David Liebel, Warden Neal, Theresa Johnson, Wayne Peeples, Christina Reagle, Lloyd Arnold, and Supervisor Greer in their individual capacities for failing to provide celebratory feasts from 2023 through March 2025 for Islamic holidays on par with those provided for Christian and Jewish holidays to the extent required by the Establishment Clause;
>
> (4) A Religious Land Use and Institutionalized Persons Act (RLUIPA) claim against Warden Ron Neal in his official capacity for injunctive relief to obtain a diet that complies with his sincere religious belief to regularly consume halal meat from herbivorous animals and to eat food prepared only by Muslims; and
>
> (5) A RLUIPA claim against Warden Ron Neal in his official capacity for injunctive relief to be able to celebrate the Muslim holidays of Eid al-Fitr and Eid ul-Adha as required by his sincere religious beliefs.

(ECF 158).

The pending motions principally pertain to two discovery requests served by Mayberry on the Aramark defendants. On February 6, 2025, Mayberry served his First Set of Requests for Production, and Request No. 24 sought substantial information relating to the costs associated with feeding the inmate population. (ECF 51 at 10-11). The Aramark defendants objected to this request on the basis of irrelevancy and immateriality. (ECF 110 at 10-11). On April 24, 2025, Mayberry served his Second Set of Requests for Production, and Request No. 1 sought the Aramark Correctional Services Medical Nutrition Therapy & Religious Meals Manual. (ECF 113 at 8). The Aramark defendants objected to this request on the basis of relevancy and that the manual contained proprietary information. (ECF 146 at 3).

On December 8, 2025, the Court addressed the discovery disputes relating to these two discovery requests. (ECF 317). With respect to Request No. 24 of the First Set of Requests for Production, the Court substantially narrowed the request but ordered the Aramark defendants to provide "any documentation reflecting the current cost of providing religious meals and celebratory holiday meals to inmates at the Indiana State Prison." (*Id.* at 19). With respect to

Request No. 1 of the Second Set of Requests for Production, the Court found that the Aramark defendants had not adequately explained how the purportedly propriety nature of the manual amounted to a valid objection. (*Id.* at 21). Consequently, the Court ordered the Aramark defendants to produce the manual but allowed leave to reassert their objection with a more thorough explanation. (*Id.*).

<u>Aramark Manual</u>

On March 10, 2026, Mayberry filed the pending motion seeking to compel the Aramark defendants' compliance in connection with Request No. 24 of the First Set of Requests for Production. (ECF 359). On March 24, 2026, the Aramark defendants filed the pending motion for a protective order in connection with the same discovery request. (ECF 368). In that motion, the Aramark defendants asked the Court to either sustain their objection on the grounds of irrelevancy and confidentiality or to allow them to produce the manual subject to a protective order. (*Id.*). On August 10, 2026, the Court reviewed these motions and deferred them pending *in camera* review of the manual. (ECF 429).

The Aramark defendants have now submitted the manual for *in camera* review. (ECF 461). In briefing, Mayberry has explained that the manual might be materially relevant to this claims for two specific reasons. First, it "could disclose Aramark Defendants' accommodation of a renal diet or other specialized diet that is limited to very few prisoners, which would belie the State defendants' claim of hardship and inability to serve a specialized diet for a small number of prisoners." (ECF 376 at 4 n.1). Second, it "could disclose comparable medical or religious diets that require similar special accommodations or exemptions as those [he seeks] for a proper halal diet." (*Id.* at 6). Relevant to these assertions is that, in the operative complaint, Mayberry specifically explained that his then-current diet was not consistent with his religious beliefs due

to the use of unsafe and contaminated water for drinking and the preparation of his food, a lack of halal-certified meat, and his food not being prepared by Muslims. (ECF 159 at 7). At the outset of this case, Mayberry also filed a motion for a preliminary injunction for a proper halal diet. (ECF 30). The Warden construed this motion as seeking a specialized menu of halal meals prepared by specialized Muslim employees in a specialized kitchen and argued that accommodating Mayberry in this expansive manner would be administratively burdensome. (ECF 30).

Though Mayberry has since indicated that his religious dietary needs could be accommodated in other ways, the State defendants, as far as the Court can tell, have never asserted "the inability to serve a specialized diet for a small number of prisoners." Further, none of the diets detailed in the manual have specialized requirements for water, certified food items, or food prepared by individuals of a particular religion. Nor does the manual seem materially relevant to the issues in this case in any other respect.

The Court also finds that the Aramark defendants' confidentiality concerns are well taken. They had argued that the manual concerned operational methods, protocols, and implementation strategies for medical and religious meal accommodations in correctional facilities and that disclosing it would put Aramark at a competitive disadvantage. The manual largely focuses on the provision of various medical diets and has detailed instructions and guidelines toward that end, and, it is not difficult to perceive how this information might give its competitors in the correctional food service industry an advantage. On this basis, the Court will grant the Aramark defendants' motion for a protective order and deny Mayberry's motion to compel. More specifically, the Aramark defendants need not produce the Aramark Correctional Services Medical Nutrition Therapy & Religious Meals Manual.

Costs of Religious Meals

On March 24, 2026, the Aramark defendants filed a supplemental response to Request No. 24 of the First Set of Requests for Production in which they listed the costs for a kosher meal but provided no responsive documentation. (ECF 369). They also objected to the request as irrelevant and overly broad, stating that "they serve multiple religious celebratory meals at multiple correctional facilities. The costs for each meal at each facility varies." (ECF 382 at 2). The Court observed that lodging objections to a discovery ruling issued by the Court within discovery responses directed at an opposing party was unusual and that the Court had already narrowed the request to meals currently served at the Indiana State Prison. (ECF 429 at 6). The Court further defined "current" as meals served or planned to be served in 2025 and 2026 and ordered the Aramark defendants to produce responsive documentation. (*Id.*).

On September 8, 2026, the Aramark defendants filed the pending motion to reconsider the orders requiring them to respond to Request No. 24 of the First Set of Requests for Production. (ECF 445). Their primary objection is that the responsive documents "to the extent they exist, likely include" financial information that would afford an advantage to its business competitors if divulged. They propose limiting the response to providing the "aggregate cost of providing kosher meals to inmates in 2025 and 2026, including a simple cost summary for the specific kosher meal category." In response, Mayberry suggests that the Aramark defendants can protect against confidentiality concerns by producing the documents subject to restrictions, such as a protective order. He also notes that the Aramark defendants refer to the responsive documents in such a way that suggests that they have lodged this objection and filed this motion without actual knowledge of their contents or even confirmation of their existence. He maintains that the limited information offered by the Aramark defendants does not suffice for him to

litigate his claims and further remarks on the unusual timing of their new objections to this discovery request. Based on the Aramark defendants' reply, it appears that they are amenable to Mayberry's proposal to produce the documents subject to restrictions.

The Court declines to limit production to cost summaries as proposed by the Aramark defendants. Their objection on the basis of confidentiality is both untimely and premature: untimely because it should have been raised well before the issuance of the Court's discovery order in December 2025, and premature because it does not appear that the Aramark defendants have reviewed or even located any responsive documents. That said, there may yet be some legitimacy to the Aramark defendants' concerns, and the parties appear to have reached a reasonable resolution of this discovery dispute on their own accord. Consequently, the Court will grant the motion to reconsider in part.

The directive from the prior order remains in place:

> The Aramark defendants should produce documentation responsive to the discovery request as reformulated by the court and must clarify whether they are withholding any responsive documents. If the Aramark defendants are unable to produce fully responsive documentation, they should explain how they have complied with their obligation to use reasonable efforts to search for it.

(ECF 429 at 6). However, the Court will allow the Aramark defendants to redact unresponsive propriety information and produce the documents subject to a protective order. The Aramark defendants need only file the redacted version of the documents at this time and may file them under seal. The Aramark defendants shall comply with this order on or before **November 13, 2026**.

The Court now issues a protective order pursuant to Fed. R. Civ. P. 26(c). **Mayberry may use the documents produced by the Aramark defendants in response to Request No. 24 of the First Set of Requests for Production only for purposes of litigating this case,**

**including appeals. He must refrain from otherwise disclosing these documents or their contents to other individuals, entities, or to the public. He must refrain from making copies of these documents. He must also destroy any copies within his possession or control at the conclusion of this case, including appeals. Failing to comply with this protective order may result in sanctions, including, but not limited to monetary fines and dismissal of this case.**[1]

Finally, the State defendants filed a motion to seal Mayberry's medical records. (ECF 459). On September 18, 2026, the State defendants produced his medical records as discovery and filed them pursuant to the local rules. (ECF 457, ECF 458). Because it is presently unclear whether these particular medical records will be material to resolving this case, the Court will grant this motion at this time. However, if the parties file a dispositive motion relying on any of these materials, there is a presumption that they will become part of the public record. *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 546 (7th Cir. 2002) ("[V]ery few categories of documents are kept confidential once their bearing on the merits of a suit has been revealed."); *Matter of Krynicki*, 983 F.2d 74, 75 (7th Cir. 1992) ("What happens in the halls of government is presumptively open to public scrutiny. Judges deliberate in private but issue public decisions after public arguments based on public records.").

For these reasons, the Court:

(1) DENIES the motion to compel (ECF 359);

(2) GRANTS the motion for a protective order (ECF 368);

[1] The Court does not perceive the Aramark defendants as seeking a protective order against the State defendants, but to the extent they believe one is warranted, they should file a separate motion.

(3) GRANTS IN PART the motion to reconsider (ECF 445) and ORDERS the Aramark defendants to produce responsive documents, as outlined above, on or before **November 13, 2026**;

(4) ENTERS a protective order with respect to documents produced in response to Request No. 24 of the First Set of Requests for Production;

(5) GRANTS the motion to seal (ECF 459); and

(6) DIRECTS the clerk to maintain ECF 457 and ECF 458 under seal.

SO ORDERED.

Entered this 14th day of October 2026.

/s/ Andrew L. Teel
Andrew L. Teel
United States Magistrate Judge